IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

EUROPLASMA S.A.

        Plaintiff,

v.

SOLENA GROUP, INC.

        Defendant.

Case No.: 1:08-cv-01089 (HHK)

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT OR, IN THE ALTERNATIVE, TO STAY AND TO COMPEL ARBITRATION AND CROSS-MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Europlasma S.A. ("Plaintiff" or "Europlasma"), by and through counsel, respectfully submits this Opposition to the Motion to Dismiss Complaint Or, In the Alternative, to Stay and to Compel Arbitration filed by Defendant, Solena Group, Inc. ("Solena"). Pursuant to Fed. R. Civ. P. 56 and Local Rule 56.1, Europlasma also cross-moves for summary judgment on its Complaint against Solena. The reasons that Solena's motion should be denied and Europlasma's cross-motion for summary judgment should be granted are set forth in the accompanying supporting statement of points and authorities.

Briefly, this is an action for breach of a promissory note. Solena has attempted to introduce matters outside the pleadings that bear no relation to the promissory note at issue in an effort to convince this Court that it lacks subject matter jurisdiction and/or to try to create a factual dispute that would preclude summary judgment in Europlasma's favor. Despite its efforts in this regard, however, Solena cannot demonstrate that jurisdiction is lacking or that there are any material issues of fact in dispute. The undisputed record shows that Solena executed a promissory note requiring it to pay certain sums to Europlasma by January 10, 2008,

and that Solena breached the promissory note by failing to make such payment by the specified due date (or any time thereafter). It is also undisputed that the promissory note does not contain any arbitration provisions. When considered along with the other unchallenged facts alleged in the Complaint, these undisputed facts are sufficient to establish this Court's jurisdiction. These same undisputed facts, together with the applicable law, also make clear that Europlasma is entitled to summary judgment on all of its claims.

Accordingly, Europlasma respectfully requests that the Court (i) deny Solena's Motion to Dismiss Complaint or, in the Alternative, to Stay and to Compel Arbitration and (ii) enter an order granting summary judgment to Europlasma. Pursuant to Local Rule 7(f), Europlasma requests oral argument before the Court.

Respectfully submitted,

EUROPLASMA, S.A.

By:        /s/ Joanne L. Zimolzak
        Joanne L. Zimolzak, D.C. Bar No. 452035
        Frank M. Rapoport, D.C. Bar No. 326512
        MCKENNA LONG & ALDRIDGE LLP
        1900 K Street, NW
        Washington, D.C. 20006
        (202) 496-7500
        (202) 496-7756 (facsimile)
        jzimolzak@mckennalong.com

Dated: August 5, 2008

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

EUROPLASMA S.A.

        Plaintiff,

v.

SOLENA GROUP, INC.

        Defendant.

Case No.: 1:08-cv-01089 (HHK)

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF ITS OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
COMPLAINT OR, IN THE ALTERNATIVE, TO STAY AND TO COMPEL
<u>ARBITRATION AND CROSS-MOTION FOR SUMMARY JUDGMENT</u>**

Joanne L. Zimolzak, D.C. Bar No. 452035
Frank M. Rapoport, D.C. Bar No. 326512
MCKENNA LONG & ALDRIDGE LLP
1900 K Street, NW
Washington, D.C.  20006
(202) 496-7500
(202) 496-7756 (facsimile)
Attorneys for Plaintiff, Europlasma S.A.

Dated:  August 5, 2008

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................ii

INTRODUCTION ..............................................................................................................1

FACTUAL BACKGROUND...............................................................................................2

     A.    The Parties ..............................................................................................2

     B.    Solena's Purchase of a 300KW Torch From Europlasma ......................2

     C.    The Promissory Note and Solena's Default ..........................................2

     D.    Europlasma's Collection Efforts ...........................................................3

     E.    The Master Teaming Agreement ...........................................................4

ARGUMENT.....................................................................................................................6

I.     SOLENA'S RULE 12 MOTION SHOULD BE DENIED BECAUSE
      EUROPLASMA'S COMPLAINT FOR BREACH OF A PROMISSORY NOTE
      IS PROPERLY BEFORE THIS COURT ......................................................6

     A.    Governing Principles of Contract Interpretation ...................................6

     B.    The Note is Not Subject To the ADR Provisions of the Teaming
         Agreement ..............................................................................................7

     C.    This Court Has Subject Matter Jurisdiction To Hear Europlasma's Claims........10

     D.    Europlasma's Suit States A Claim Upon Which Relief Can Be Granted ............10

II.    THIS COURT SHOULD GRANT EUROPLASMA'S CROSS-MOTION FOR
      SUMMARY JUDGMENT ..............................................................................11

     A.    Summary Judgment Standards for Contract Interpretation ..................11

     B.    Europlasma Is Entitled to Enforcement of the Promissory Note as a Matter
         of Law....................................................................................................12

         1.    The Note Is A Valid and Enforceable Contract........................12

         2.    Solena Breached Its Obligations Under the Promissory Note.................13

         3.    Europlasma Is Entitled to Payment of the Principal Amount Plus
            Interest Due under the Promissory Note and All Costs of
            Collection................................................................................14

CONCLUSION ................................................................................................................15

REQUEST FOR RELIEF ................................................................................................16

## TABLE OF AUTHORITIES

Page(s)

CASES

Allied Capital Corp. v. GC-Sun Holdings, L.P.,
  910 A.2d 1020 (Del. Ch. 2006) .................................................................................6

Anderson v. Liberty Lobby, Inc.,
  477 U.S. 242 (1986) ...............................................................................................11

Berg v. Faulkner,
  2007 WL 2809911 (N.D. Tex. Sept. 27, 2007) (Slip Op.) .......................................9

Celotex Corp. v. Catrett,
  477 U.S. 317 (1986) ...............................................................................................11

Citadel Holding Corp. v. Roven,
  603 A.2d 818 (Del. 1992) .........................................................................................6

Conley v. Gibson,
  355 U.S. 41 (1954) .................................................................................................10

Consol. Brokers Ins. Servs., Inc. v. Pan-Am. Assurance Co., Inc.,
  427 F.Supp. 2d 1074 (D. Kan. 2006) ....................................................................8, 9

Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.,
  702 A.2d 1228 (Del. 1997) .......................................................................................9

Gen. Motors Corp. v. Cox,
  304 A.2d 55 (Del. 1973) .........................................................................................15

Gould v. Wien,
  C.A. No. 2004-10-009, 2007 WL 4158041 (Del.C.P. Nov. 15, 2007)....................14

Haft v. Dart Group Corp.,
  841 F. Supp. 549 (D. Del. 1993) ............................................................................13

Howsam v. Dean Witter Reynolds, Inc.,
  537 U.S. 79 (2002) ...................................................................................................7

Husband S. v. Wife S.,
  294 A.2d 89 (Del. 1972) .........................................................................................15

In re Fleming Cos., Inc.,
  325 B.R. 687 (Bkrtcy. D. Del. 2005) .....................................................................8, 9

Knight v. Grinnage,
    No. 14823, 1997 WL 633299 (Del. Ch. October 7, 1997) ........................................ 14

Mokhiber v. U.S. Dep't of Treasury,
    355 F. Supp. 2d 65 (D.D.C. 2004) ..................................................................... 12

Pellaton v. Bank of N.Y.,
    592 A.2d 473 (Del. 1991) ......................................................................... 6, 11

Pers. Sec. & Safety Sys., Inc. v. Motorola, Inc.,
    297 F.3d 388 (5th Cir. 2002) .......................................................................... 8

Rhone-Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.,
    616 A.2d 1192 (Del. 1992) ............................................................................. 6

Salisbury v. Credit Serv., Inc.,
    199 A. 674 (Del. Super. Ct. 1937) .................................................................. 12

Scheuer v. Rhodes,
    416 U.S. 232 (1974) ................................................................................... 10

Shear v. Nat'l Rifle Ass'n,
    606 F.2d 1251 (D.C. Cir. 1979) ..................................................................... 10

United Rentals, Inc. v. RAM Holdings, Inc.,
    937 A.2d 810 (Del. Ch. 2007) .................................................................... 12, 14

VLIW Tech., LLC v. Hewlett-Packard Co.,
    840 A.2d 606 (Del. 2003) ............................................................................. 12

Wolf v. Westwood Mgmt. LLC,
    503 F.Supp. 2d 274 (D.D.C. 2007) .................................................................... 8


STATUTES

28 U.S.C. § 1332 ......................................................................................... 10

28 U.S.C. § 1332 (a)(2) ................................................................................. 10


OTHER AUTHORITIES

Fed. R. Civ. P. 12(b)(1) ................................................................................ 10

Fed. R. Civ. P. 12(b)(6) ................................................................................ 10

Fed. R. Civ. P. 12(d) ..................................................................................................... 11

Fed. R. Civ. P. 56 ........................................................................................................... 11

Fed. R. Civ. P. 56(c) ....................................................................................................... 11

## **INTRODUCTION**

Plaintiff, Europlasma S.A. ("Europlasma"), by and through counsel, respectfully submits the following memorandum of points and authorities in support of Europlasma's Opposition to the Motion to Dismiss Complaint Or, In the Alternative, to Stay and to Compel Arbitration submitted by Defendant, Solena Group, Inc. ("Solena"), and Europlasma's Cross-Motion for Summary Judgment on its Complaint against Solena.

This is an action for breach of a promissory note. Solena has attempted to introduce matters outside the pleadings that bear no relation to the promissory note at issue in an effort to convince this Court that it lacks subject matter jurisdiction and/or to create a factual dispute that would preclude summary judgment in Europlasma's favor. Despite its efforts in this regard, however, Solena cannot demonstrate that jurisdiction is lacking or that there are any material issues of fact in dispute. The undisputed record shows that Solena executed a promissory note requiring it to pay certain sums to Europlasma by January 10, 2008, and that Solena breached the promissory note by failing to make such payment by the specified due date (or any time thereafter). It is also undisputed that the promissory note does not contain any arbitration provisions. When considered along with the other unchallenged facts alleged in the Complaint, these undisputed facts are sufficient to establish this Court's jurisdiction. These same undisputed facts, together with the applicable law, also make clear that Europlasma is entitled to summary judgment on all of its claims.

Accordingly, Solena's Motion to Dismiss Complaint or, in the Alternative, to Stay and to Compel Arbitration should be dismissed, and Europlasma's Cross-Motion for Summary Judgment should be granted.

# FACTUAL BACKGROUND[1]

### A.    The Parties

Europlasma is a French corporation with its principal place of business in Bordeaux, France.  SMF ¶ 1.  Solena is a Delaware corporation with its principal place of business in the District of Columbia.  SMF ¶ 2.

### B.    Solena's Purchase of a 300KW Torch From Europlasma

On approximately October 3, 2006, Solena placed an order with Europlasma to purchase one (1) 300KW plasma torch ("300KW torch") to be used at a research and development center in Puerto Rico.  SMF ¶ 3.  Solena confirmed its order for the 300KW torch, including with respect to the purchase price and payment terms, in a letter dated October 3, 2006.  Id.

Europlasma shipped the 300KW torch on February 7, 2007.  SMF ¶ 5.  Solena paid Europlasma the shipping costs and part of the purchase price for the 300KW plasma torch, but did not pay Europlasma the remainder of the purchase price.  SMF ¶ 6.  The outstanding balance of the purchase price is €394,517.  Id.

### C.    The Promissory Note and Solena's Default

On September 14, 2007, Solena executed an Unsecured Promissory Note ("Note") in which it agreed to pay Europlasma the outstanding balance of the purchase price for the 300KW torch, plus interest, on January 10, 2008 (the "Due Date").  SMF ¶ 7.  In addition to the €394,517 principal amount and interest due, the Note provides for Europlasma's recovery of costs associated with collection in the event of Solena's failure to make payment on or before the Due Date:

---

[1] Pursuant to LCvR 7(h) and LCvR 56.1, Europlasma has filed separately a Statement Of Material Facts As To Which There Is No Genuine Issue In Support Of Its Cross-Motion For Summary Judgment (hereafter, "Statement of Undisputed Material Facts" or "SMF"), to which Europlasma refers the Court.  For the Court's convenience, Europlasma has summarized the facts underlying this dispute in this Memorandum, with references to the corresponding numbered paragraphs in the accompanying Statement of Undisputed Material Facts.

> If any payment obligation under this Note is not paid when due,
> [Solena] shall be obligated to pay all costs of collection, including
> reasonable attorney fees, whether or not a lawsuit is commenced as
> part of the collection process.

SMF ¶ 8.

Notwithstanding its agreement as set forth in the Note, Solena failed to make payment on or before the Due Date and, to date, still has not paid Europlasma the amounts due under the Note.  SMF ¶ 9.  The amounts due under the Note consist of €394,517 in principal, plus interest on the unpaid principal at an annual rate of four percent (4%) from September 14, 2007, the date Solena executed the Note.  SMF ¶ 10.

### D.     Europlasma's Collection Efforts

On February 14, 2008, approximately one month after Solena defaulted on the Note, Europlasma sent Solena a letter offering to extend payment of the Note if Solena would make at least partial payment of the outstanding amount due.  SMF ¶ 11.  Solena did not accept this offer, but in a letter dated March 13, 2008, proposed instead to return the 300KW torch and have purchase payments to date treated as a form of "rent."  In the same letter, Solena noted that it was involved in a financing round led by Deutsche Bank AG (London) as placement agent, which was expected to close by the end of April.  SMF ¶ 12.

Europlasma responded on April 3, 2008, by making a further proposal in an effort to settle this matter.  Specifically, Europlasma agreed to allow Solena until April 15, 2008, to make a final reduced payment of €150,000 and provide Europlasma a €300,000 promissory note as security for the return of the used 300KW torch in good condition, upon which Solena would receive a €30,000 credit against its next purchase of a plasma torch from Europlasma.  SMF ¶ 13. Solena Group failed to respond by April 15, 2008.  Solena Group also failed to respond to a

renewed demand letter dated April 16, 2008, which requested a response no later than 5:00 p.m. EST on April 23, 2008.  SMF ¶ 14.

Through subsequent discussions with Solena's counsel, Europlasma learned that Solena was unable to return the 300KW torch (despite having previously offered to do so) or even to grant Europlasma a security interest in the torch.  SMF ¶ 15.  Additional negotiations between the parties to resolve their dispute were not successful.  Id.

Europlasma filed this lawsuit alleging breach of the Note on June 24, 2008.  To date, Europlasma has incurred costs of collection, including attorneys' fees and costs, in the amount of $40,198.35.  SMF ¶ 16.

### E.    The Master Teaming Agreement

On approximately May 29, 2007, more than seven months after Solena ordered the 300KW torch that is the subject of the Note, Europlasma and Solena entered into a Master Teaming Agreement ("Teaming Agreement" or "Agreement") for the principal purpose of enabling them "to work together to develop and implement Projects worldwide employing Solena's Technology utilizing Europlasma's torch systems . . . ."  SMF ¶ 17.  The Teaming Agreement became effective on May 29, 2007, and specifies a term of three (3) years from the effective date.  SMF ¶ 18.  Solena committed under the Teaming Agreement to treat Europlasma as its preferred provider of torch systems and to purchase all such systems needed for "Solena Projects utilizing Solena Technology" from May 29, 2007, forward.  SMF ¶¶ 17, 20.  In consideration for Solena's commitments in this regard, Europlasma agreed to provide discounted pricing for Solena's torch purchases after May 29, 2007, in accordance with the terms of the Teaming Agreement.  SMF ¶ 21.

Consistent with the prospective nature of the Teaming Agreement, the parties included in Exhibit A to the Agreement the number of torches Solena would purchase from Europlasma for

each of the three years covered by the Agreement -- i.e., 2007, 2008 and 2009. SMF ¶ 23. As set forth in Exhibit A, Solena anticipated ordering two types of plasma torch systems from Europlasma during these three years: "Type C" 0.8MW torch systems and "Type D" 2MW torch systems. SMF ¶ 24. Europlasma agreed to offer preferred pricing for the referenced .08MW and 2MW torch systems, depending on the number of these systems ordered during the three year term of the Teaming Agreement. SMF ¶¶ 21, 24. Exhibit A does not reference the 300KW torch purchased by Solena in 2006 or any other torches of this smaller size. SMF ¶ 24.

The Teaming Agreement contains a mandatory alternative dispute resolution ("ADR") clause, which includes provisions regarding, e.g., non-binding and binding arbitration. SMF ¶ 25. The ADR clause applies to any "controversy, claim or dispute arising out of or relating to this Agreement." Id. The dispute that is the subject of this lawsuit, however, does not arise out of or relate to the Teaming Agreement. The Teaming Agreement by its express terms relates to Solena's purchases of .08MW and/or 2MW plasma torch systems from Europlasma during the three year term of the Agreement -- i.e., May 29, 2007, through May 29, 2009. SMF ¶¶ 20, 24. The parties' current dispute involves neither these types of plasma torch systems nor any sale/purchase of a Europlasma torch after May 29, 2007. Rather, Europlasma seeks to enforce a promissory note in which Solena agreed to pay Europlasma the outstanding balance (plus interest) for a 300KW torch purchased in October 2006, more than seven months before the effective date of the Teaming Agreement. See Complaint ("Compl."); see also SMF ¶¶ 7, 9, 16.

## ARGUMENT

**I.     SOLENA'S RULE 12 MOTION SHOULD BE DENIED BECAUSE EUROPLASMA'S COMPLAINT FOR BREACH OF A PROMISSORY NOTE IS PROPERLY BEFORE THIS COURT**

### A.     Governing Principles of Contract Interpretation

Europlasma's Complaint alleges breach of contract stemming from Solena's failure to comply with the terms of the Note.  In response to Europlasma's Complaint for breach of the Note, Solena asserts that this Court does not have subject matter jurisdiction and that the Complaint fails to state a claim upon which relief may be granted.  The sole basis offered for dismissal is that Europlasma allegedly failed to comply with the "contractually required dispute resolution procedures" set forth in the parties' Teaming Agreement, which Solena alleges are applicable to the issues raised by Europlasma's Complaint.  Def's Statement of Points and Authorities in Support of Its Mot. to Dismiss ("Def's Mem.") at 5-6.

Both the Note and the Teaming Agreement specify that they are to be interpreted in accordance with Delaware law.  SMF ¶¶ 8, 25.  "Under Delaware law, the proper interpretation of language in a contract is a question of law.  Accordingly, a motion to dismiss is a proper framework for determining the meaning of contract language."  Allied Capital Corp. v. GC-Sun Holdings, L.P., 910 A.2d 1020, 1030 (Del. Ch. 2006) (citing OSI Sys., Inc. v. Instrumentarium Corp., 892 A.2d 1086, 1090 (Del. Ch. 2006).  When the language of a contract is plain and unambiguous, binding effect should be given to its evident meaning.  E.g., Rhone-Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co., 616 A.2d 1192, 1195 (Del. 1992).  Only where the contract's language is susceptible of more than one reasonable interpretation may a court look to extrinsic or parol evidence; otherwise, only the language of the contract itself considered in determining the parties' intentions.  E.g., Citadel Holding Corp. v. Roven, 603 A.2d 818, 822 (Del. 1992); see also Pellaton v. Bank of N.Y., 592 A.2d 473, 478 (Del. 1991) ("[I]f the

6

instrument is clear and unambiguous on its face, neither this Court nor the trial court may consider parol evidence to interpret it or search for the parties' intentions . . . .")(internal punctuation and citation omitted).

**B.**      **The Note is Not Subject To the ADR Provisions of the Teaming Agreement**

It is undisputed that the Note does not contain any arbitration provisions. Accordingly, there is nothing on the face of the Note to indicate that Europlasma agreed to submit the issue of Solena's breach of the Note to arbitration. E.g, Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983)) (arbitration is a matter of contract; "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.")

To get around the lack of any arbitration provisions in the Note, Solena suggests that the Note and the Teaming Agreement (which, unlike the Note, contains an arbitration provision) are somehow related or integrated documents. In particular, Solena contends that its October 3, 2006 purchase of a 300KW torch from Europlasma, as well as the Note subsequently executed by Solena as consideration for the outstanding balance of the purchase price, "clearly arise out of and relate to the Master Teaming Agreement." Def's Mem. at 5; see also Velez Aff., Ex. 1 to Def's Mem. at ¶ 8 ("The plasma tourch [sic] purchased by Solena from Europlasma for the research and development center in Puerto Rico is one of the planned projects which are the subject of the Agreement.") This contention, however, is belied by the facts.[2]

---

[2] Although the parties held various discussions following Solena's default, as memorialized in various correspondence, Solena never before mentioned the Teaming Agreement or the purported need to arbitrate its breach of the Note. See SMF ¶¶ 11-15 and correspondence referenced therein; see also Letter dated Apr. 3, 2008, from Europlasma to Solena, Ex. D to the Affidavit of Joanne L. Zimolzak ("Zimolzak Aff.") attached hereto as Exhibit 1; see also Def's Mem. at 4-5.

Significantly, the record shows that the parties executed the Teaming Agreement on or about May 29, 2007, as consideration for the parties' mutual promises with respect to the purchase/sale of .08MW and 2MW Europlasma torches from that date forward, whereas the parties executed the Note on September 14, 2007, as consideration for the outstanding balance of the purchase price of a 300KW torch purchased months earlier (i.e., on October 3, 2006). SMF ¶¶ 3, 7, 17, 20, 24. This plainly is not a situation where the parties executed two agreements at the same time in connection with the same transaction, as is often the case where a court determines that an arbitration clause in one agreement is enforceable in a dispute involving the other. [3] See, e.g., In re Fleming Cos., Inc., 325 B.R. 687, 691 (Bkrtcy. D. Del. 2005). Nor is this a situation where two separate contractual documents must be read together because they are supported by the same consideration. See id.

Moreover, contrary to Solena's suggestion, the ADR provision in the Teaming Agreement is simply not broad enough to encompass the Note. See Def's Mem. at 4-5. By its terms, that provision applies solely to "controvers[ies], claim[s] or dispute[s] arising out of or

---

[3] Defendant relies upon three cases to support its contention that the Note should be subject to the ADR provisions of the Teaming Agreement, each of which is readily distinguishable from the present case. See Def's Mem. at 5. In Pers. Sec. & Safety Sys., Inc. v. Motorola, Inc., 297 F.3d 388, 393 (5th Cir. 2002), the court held that a Stock Purchase Agreement ("SPA") and a Product Development Agreement ("PDA") were both subject to the arbitration provision of the PDA because 1) they were executed contemporaneously as part of the same transaction; 2) "each agreement expressly anticipate[d] the execution of the other"; and 3) the parties attached the PDA, which contained the arbitration provision, as an exhibit to the SPA. In Wolf v. Westwood Mgmt. LLC, 503 F.Supp. 2d 274, 280-81 (D.D.C. 2007), the court determined that the arbitration provision contained in a previously executed contract survives the expiration of the contract when the "obligations at issue in [the] case [could] only have arisen from [that] Agreement because there was no other agreement" between the parties. In Consol. Brokers Ins. Servs., Inc. v. Pan-Am. Assurance Co., Inc., 427 F.Supp. 2d 1074, 1082-83 (D. Kan. 2006), the court found that a contract arbitration provision providing that "any disputes between the parties shall be resolved by arbitration" extended beyond disputes arising under the particular contract because it was without qualification. (Emphasis in original.) The facts and arbitration provisions considered in these cases are vastly different from the circumstances in this action for breach of promissory note. In particular, the Note and the Teaming Agreement were not contemporaneously executed and neither expressly referenced the other contract. SMF ¶¶ 7, 17, 24. Furthermore, the scope of the arbitration provision in the Teaming Agreement is not without qualification -- it is limited to "controvers[ies], claim[s] or dispute[s] arising out of or relating to this Agreement." SMF ¶ 25 (emphasis added). Therefore, Defendant's reliance upon the referenced cases is misplaced.

related to <u>this</u> Agreement, or the breach thereof, . . . ." SMF ¶ 25 (emphasis added). Such narrow language is inconsistent with the notion that disputes between the parties for breach of any agreements <u>other than</u> the Teaming Agreement (in this case, the Note), or over anything else outside of the Teaming Agreement, would be subject to arbitration. <u>See</u>, <u>e.g.</u>, <u>In re Fleming</u>, 325 B.R. at 690 (arbitration clause stating that "[a]ll disputes" between the parties, "including any matter relating to this Agreement" was sufficiently broad to encompass disputes among the parties other than those relating to the referenced Agreement); <u>Consolidated Brokers</u>, 427 F.Supp. 2d at 1082-83 (same, with respect to arbitration clause discussing "any disputes" <u>between the parties</u>).

Solena cannot point to any evidence to the contrary. Without providing any factual or legal authority, Solena baldly asserts that "[t]he fact that the Master Teaming Agreement was entered into <u>after</u> the first torch had been shipped establishes that the entire transaction is within the scope of the Master Teaming Agreement." Def's Mem. at 5 (emphasis in original). In reality, however, the fact that the Teaming Agreement was entered into after the purchase of the 300KW torch is precisely the reason the Note is not subject to the arbitration provision -- the Teaming Agreement is limited to purchases made after its execution. SMF ¶ 20.

Thus, the clear and unequivocal language of both the Note and the Teaming Agreement establish that these are separate agreements, supported by separate consideration, and that the ADR provision in the Teaming Agreement does not apply to the Note. As such, extrinsic evidence such as Ms. Velez's statement that Solena's October 3, 2006 purchase of a 300KW torch is subject to the Teaming Agreement (Ex. 1 to Def's Mem. at ¶ 8) may not be used "to interpret the intent of the parties, to vary the terms of the contract, or to create an ambiguity." <u>E.g.</u>, <u>Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.</u>, 702 A.2d 1228, 1232 (Del. 1997).

In situations such as this one, where a promissory note executed months after a separate agreement containing an arbitration clause makes no reference to the earlier agreement or to amending the earlier agreement, courts have rejected attempts to compel arbitration in an action seeking repayment of the note.  See Berg v. Faulkner, No. CIV.A. 3:06-CV-2243-L, 2007 WL 2809911 (N.D. Tex. Sept. 27, 2007) (Slip Op.).  This Court should do the same here and reject Solena's efforts to compel Europlasma to arbitrate its action for breach of the Note.

C.    **This Court Has Subject Matter Jurisdiction To Hear Europlasma's Claims**

In evaluating a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), all well-pleaded factual allegations of the Complaint are to be construed in the light most favorable to the plaintiff.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). Additionally, the court must accept as true all reasonable inferences to be drawn from the well-pleaded factual allegations.  Id.  Here, because the Note is a separate legal document not subject to the terms of the Teaming Agreement (see § I.B., supra), the so-called "mandatory ADR procedures" contained in the Agreement upon which Solena relies as grounds for its motion are irrelevant to this case.  See § I.B., supra.  The Court need look only to the factual allegations of the Complaint in order to resolve Solena's motion.  Scheuer, 416 U.S. at 236.

As is relevant here, subject matter jurisdiction is satisfied if diversity exists between the parties and the requisite amount in controversy is satisfied.  See 28 U.S.C. § 1332.  The Complaint alleges, among other things, that Europlasma and Solena are citizens of different states and that the amount in controversy exceeds $75,000.  Compl. ¶¶ 4, 16 [R. 1].  These facts, which Solena has admitted (SMF ¶¶ 1-2, 10), are sufficient to establish that this matter is properly before this Court pursuant to 28 U.S.C. § 1332 (a)(2).  Accordingly, Solena's motion to dismiss for lack of subject matter jurisdiction should be denied.

**D.     Europlasma's Suit States A Claim Upon Which Relief Can Be Granted**

A complaint should not be dismissed for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1954); see Shear v. Nat'l Rifle Ass'n, 606 F.2d 1251, 1253 (D.C. Cir. 1979).   Solena asserts that Europlasma's Complaint cannot meet this standard because Europlasma has not complied with the ADR provisions of the Teaming Agreement.   See Def's Mem. at 6.   As the Note is not subject to those provisions, however (see § I.B., supra), this argument also must fail.[4]

**II.     THIS COURT SHOULD GRANT EUROPLASMA'S CROSS-MOTION FOR SUMMARY JUDGMENT**

**A.     Summary Judgment Standards for Contract Interpretation**

Pursuant to Fed. R. Civ. P. 56, summary judgment is appropriate if the movant can show that there are no genuine issues of material fact and the movant is entitled to summary judgment as a matter of law.   Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317 (1986). When determining which facts are "material," a court must look to the substantive law on which each claim rests.   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).   A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, could affect the outcome of the lawsuit.   Celotex, 477 U.S. at 322; Anderson, 477 U.S. at 255.

---

[4] Solena has presented matters outside the pleading -- i.e., the supposedly "mandatory ADR provisions" of the Teaming Agreement -- in support of its motion to dismiss for failure to state a claim upon which relief can be granted.   Pursuant to Fed. R. Civ. P. 12(d), unless these matters are excluded by the court, Solena's motion to dismiss for failure to state a claim upon which relief can be granted should be treated as a motion for summary judgment and decided in accordance with Fed. R. Civ. P. 56.   Europlasma respectfully submits that the ADR provisions of the Teaming Agreement should be excluded from this Court's consideration of Solena's motion to dismiss, as the record clearly shows that the Note at issue in this case is not within the scope of the Teaming Agreement.   See § I.B., supra, and factual references cited therein.

As discussed above and in Europlasma's statement of material facts as to which there is no genuine issue, the Note includes a choice of law provision providing that it is to be interpreted under Delaware law. SMF ¶ 8; Note, Ex. 1 to Compl. at 1 [R. 1-2]. Where, as here, the language of a contract is clear and unambiguous, the proper interpretation of the contract is a matter of law for the court to decide. Pellaton, 592 A.2d at 478. Summary judgment is appropriate only if the contract in question is unambiguous. Therefore, the threshold inquiry when presented with a contract dispute on a motion for summary judgment is whether the contract is ambiguous. Ambiguity does not exist simply because the parties disagree about what the contract means. Moreover, extrinsic, parol evidence cannot be used to manufacture an ambiguity in a contract that facially has only one reasonable meaning. United Rentals, Inc. v. RAM Holdings, Inc., 937 A.2d 810, 831 (Del. Ch. 2007).

As demonstrated herein, even viewing the evidence in the light most favorable to Solena, the relevant contractual provisions are unambiguous, and there are no genuine issues of material fact regarding the parties' rights and obligations under the Note. Accordingly, summary judgment should be granted in favor of Europlasma.[5]

**B.    Europlasma Is Entitled to Enforcement of the Promissory Note as a Matter of Law**

Three elements are required to support a breach of contract claim under Delaware law: (i) the existence of a contract; (ii) a breach of an obligation imposed by the contract; and (iii) resultant damages to the plaintiff. VLIW Tech., LLC v. Hewlett-Packard Co., 840 A.2d 606, 612 (Del. 2003). Solena's failure to pay the required sums by the Due Date constitutes a material

---

[5] This is true even if Solena's motion to dismiss is treated as a motion for summary judgment (see footnote 6, supra). ". . . [I]n ruling on cross-motions for summary judgment, the court will grant summary judgment [ ] if one of the moving parties is entitled to judgment as a matter of law upon material facts that are not genuinely disputed." See Mokhiber v. U.S. Dep't of Treasury, 355 F. Supp. 2d 65, 68 (D.D.C. 2004) (citing Rhoads v. McFerran, 517 F.2d 66, 67 (2d Cir. 1975)).

breach of the Note for which it is liable to Europlasma for the Principal Amount plus interest and costs of collection.

### 1.     The Note Is A Valid and Enforceable Contract

Upon execution of the Note, Solena and Europlasma entered into a valid and enforceable contract. The requirements of contract formation are well-established: (i) offer, (ii) acceptance, and (iii) consideration. Salisbury v. Credit Serv., Inc., 199 A. 674, 681 (Del. Super. Ct. 1937); see also Haft v. Dart Group Corp., 841 F. Supp. 549, 573 (D. Del. 1993) (stating "a fundamental tenet of contract law [is] that a valid contract requires good or valuable consideration"). It is undisputed that the Note is a valid and enforceable contract and that it was based upon valuable consideration received -- namely, the 300KW plasma torch purchased by and shipped to Solena. SMF ¶ 7.

### 2.     Solena Breached Its Obligations Under the Promissory Note

There is no genuine issue of material fact concerning Solena's breach of the Note. The Note clearly and unambiguously provides that Solena must pay Europlasma €394,517 with interest from September 14, 2007, on the unpaid principal at an annual rate of four percent (4%). Id. Solena's payment of the Principal Amount and accrued interest was due on or before January 10, 2008 (i.e., the "Due Date"). Id. Solena did not make the required payment under the Note, either by the Due Date or at any time thereafter. SMF ¶ 9. This was a clear, unequivocal breach of the Note that rendered Solena liable to Europlasma for the resultant damages.

Indeed, Solena does not dispute that it executed the Note, that it defaulted on the Note, or that it owes Europlasma the amount of €394,517 in principal, plus interest, as specified in the Note. SMF ¶¶ 7-10. Rather, Solena disputes only whether Europlasma may seek to enforce the Note in court, as opposed to through arbitration. It has done so by attempting to introduce extrinsic evidence, in the form of a statement from Solena's General Counsel, to the effect that

Solena's October 3, 2006 purchase of a 300KW plasma torch is subject to an arbitration provision contained in a Teaming Agreement entered more than seven months later. Velez Aff., Ex. 1 to Def's Mem. at ¶ 8; see also SMF ¶¶ 17-18, 25. The referenced arbitration provision, however, unambiguously applies only to prospective purchases (i.e., after May 29, 2007) of smaller plasma torches (i.e., .08MW and 2MW torches) under the Teaming Agreement. SMF ¶¶ 19-21, 24; see also § I.B., supra. Accordingly, Ms. Velez's statement "cannot be used to manufacture an ambiguity" for purposes of defeating summary judgment. United Rentals, 937 A.2d at 830.

### 3. Europlasma Is Entitled to Payment of the Principal Amount Plus Interest Due under the Promissory Note and All Costs of Collection

Because Solena breached a valid and enforceable Note, it is liable for all resultant damages. In Delaware, both courts of law and equity "routinely enforce provisions of a contract allocating costs of legal actions arising from the breach of a contract." See Knight v. Grinnage, No. 14823, 1997 WL 633299, at *3 (Del. Ch. Oct. 7, 1997). The Note specifically provides that in the event of Solena's default on its payment obligations, it is liable not only for the principal and interest amounts owed under the Note, but also for "all costs of collection, including reasonable attorney fees . . ." SMF ¶ 8. In accordance with the plain meaning of the Note, therefore, Solena is obligated to pay the amount of €394,517 in principal, plus interest as specified in the Note, and $40,198.35 in costs and attorneys' fees that Europlasma has incurred in preparation for and in connection with its collection action. See Zimolzak Aff. at ¶¶ 3-7.

Reasonableness of attorneys' fees is a question of law, and "[t]he Court must decide the reasonableness of a grant of attorney's fees and costs in each particular case." Gould v. Wien, C.A. No. 2004-10-009, 2007 WL 4158041, at *1 (Del.C.P. Nov. 15, 2007). Delaware courts

base the determination of reasonableness on factors enumerated in the Delaware Lawyers Code

of Professional Responsibility DR-1.5:[6]

> (1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.
>
> (2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.
>
> (3) The fees customarily charged in the locality for similar legal services.
>
> (4) The amount involved and the results obtained.
>
> (5) The time limitations imposed by the client or by the circumstances.
>
> (6) The nature and length of the professional relationship with the client.
>
> (7) The experience, reputation, and ability of the lawyer or lawyers performing the services.
>
> (8) Whether the fee is fixed or contingent.

Husband S. v. Wife S., 294 A.2d 89, 93 (Del. 1972); Gen. Motors Corp. v. Cox, 304 A.2d 55, 57

(Del. 1973).

Attorneys' fees in the amount of $39,461 are reasonable and should be paid by Solena.

The time required to bring this action is documented by the affidavit of counsel filed in support

of this Motion.  Zimolzak Aff. at ¶ 3-6.  The fees charged are reasonable in relationship to the

amount in controversy and the rates for civil litigation attorneys of good reputation in the District

of Columbia.  Zimolzak Aff. at ¶ 7.  Therefore, upon grant of this Motion, the Court should

---

[6] The District of Columbia Rules of Prof'l Conduct R. 1.5(a) (2007) enumerates the same eight factors to consider in determining whether attorneys' fees are reasonable.

award attorneys' fees to Solena in the amount of $39,461, plus costs in the amount of $737.35. See Zimolzak Aff. at ¶ 7.

## CONCLUSION

The undisputed record shows that Solena executed a promissory note requiring it to pay certain sums to Europlasma by January 10, 2008, and that Solena breached the promissory note by failing to make such payment by the specified due date (or any time thereafter). It is also undisputed that the Note does not contain any arbitration provisions. When considered along with the other unchallenged facts alleged in the Complaint, these undisputed facts are sufficient to establish this Court's jurisdiction. These same undisputed facts, together with the applicable law, also make clear that Europlasma is entitled to summary judgment on all of its claims.

## REQUEST FOR RELIEF

Wherefore, Europlasma respectfully requests that this Court enter an order denying Solena's motion to dismiss and granting summary judgment against Solena, awarding Europlasma the following relief:

(a)    the principal amount of €394,517;

(b)    interest on the principal amount from September 14, 2007, until the date of judgment, at an annual rate of four percent (4%);

(c)    all costs of collection, including the costs of this lawsuit and reasonable attorneys' fees; and

(d)    such other relief as may be just and equitable.

Dated:  August 5, 2008

/s/  Joanne L. Zimolzak
_____
Joanne L. Zimolzak, D.C. Bar No. 452035
Frank M. Rapoport, D.C. Bar No. 326512
MCKENNA LONG & ALDRIDGE LLP
1900 K Street, NW
Washington, D.C.  20006
(202) 496-7500
(202) 496-7756 (facsimile)
Attorneys for Plaintiff, Europlasma S.A.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA.

EUROPLASMA S.A.

        Plaintiff,

v.

SOLENA GROUP, INC.

        Defendant.

Case No.: 1:08-cv-01089 (HHK)

## PLAINTIFF'S STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT

Pursuant to LCv R 56.1, Plaintiff Europlasma S.A. ("Europlasma") hereby submits the following statement of material facts as to which there is no genuine issue.

### The Parties

1.      Europlasma is a French corporation with its principal place of business in Bordeaux, France.  Complaint at ¶ 2 [R. 1]; Def's Statement of Points and Authorities in Support of Its Mot. to Dismiss ("Def's Mem.") at 1 [R. 6].

2.      Solena is a Delaware corporation with its principal place of business in the District of Columbia.  Def's Mem. at 1 [R. 6]; Affidavit of Rocio Velez ("Velez Aff."), Ex. 1 to Def's Mem. at ¶ 2 [R. 6-2].

## Solena's Purchase of a 300KW Torch From Europlasma

3.      On approximately October 3, 2006, Solena placed an order with Europlasma to purchase one (1) 300KW plasma torch ("300KW torch") to be used at a research and development center in Puerto Rico. Velez Aff. at ¶ 5 [R. 6-2]; Solena Order dated October 3, 2006 ("Solena Order"), Ex. 3 to Def's Mem. [R. 6-2].

4.      The purchase price for the 300KW torch was €530,000, excluding consumables and commissioning, to be paid in accordance with the schedule set forth in the Solena Order. See Solena Order, Ex. 3 to Def's Mem. [R. 6-4].

5.      Europlasma shipped the 300KW torch on February 7, 2007. See Velez Aff., Ex. 1 to Def's Mem. at ¶ 6 [R. 6-2].

6.      Solena paid Europlasma the shipping costs and part of the purchase price for the 300KW plasma torch. The outstanding balance of the purchase price is €394,517. See Velez Aff., Ex. 1 to Def's Mem. at ¶ 5 [R. 6-2].

## The Promissory Note and Solena's Default

7.      On September 14, 2007, Solena executed a note in which it agreed to pay Europlasma the outstanding balance of the purchase price for the 300KW torch, plus interest, on January 10, 2008. See Velez Aff., Ex. 1 to Def's Mem. at ¶ 9 [R. 6-2]. Specifically, the note provides in relevant part that Solena must pay to Europlasma:

> . . . the aggregate sum of Three Hundred Ninety Four thousand
> Five Hundred Seventeen Euros ( €394,517) with interest from the
> date of 9/14/2007 on the unpaid principal at an annual rate of 4%
> in accordance with the following terms and provisions of this
> Unsecured Promissory Note Due 2008 (as the same may be

2

amended, modified or supplemented from time to time, this
"Note").  The unpaid principal and accrued interest shall be
payable in full on 01/10/2008 (the "Due Date").

Unsecured Promissory Note Due 2008 ("Note"), Ex. 1 to Compl. at 1 [R. 1-2].

8.    In addition to the €394,517 principal amount and interest due, the Note also

provides for Europlasma's recovery of costs associated with collection in the event of Solena's

breach:

> If any payment obligation under this Note is not paid when due,
> [Solena] shall be obligated to pay all costs of collection, including
> reasonable attorney fees, whether or not a lawsuit is commenced as
> part of the collection process.
>
> . . .
>
> This Note shall be governed and construed in accordance with the
> laws of the State of Delaware. . . .

Id.

9.    Solena failed to make payment on or before the Due Date and, to date, still has

not paid Europlasma the amounts due under the Note.  Velez Aff., Ex. 1 to Def's Mem. at ¶¶ 5,

9-10 [R. 6-2].

10.    The amounts due under the Note consist of €394,517 in principal, plus interest

from the date of September 14, 2007, on the unpaid principal at an annual rate of 4%.  Compl.

¶¶ 7, 9, 14, 16; Velez Aff., Ex. 1 to Def's Mem. at ¶¶ 5, 9 [R. 6-2]).

### Europlasma's Collection Efforts

11.    By electronic mail dated February 14, 2008, Europlasma offered to extend

payment of the Promissory Note if Solena would make at least partial payment of the

outstanding amount due.  See E-mail dated Feb. 14, 2008 from Europlasma to Solena, Ex. B to

the Affidavit of Joanne L. Zimolzak ("Zimolzak Aff.") attached as Ex. 1 to Plaintiff's Mem. of

Points and Authorities in Support of Its Opposition to Def's Mot. to Dismiss.

12.    Solena did not accept this offer, but in a letter dated March 13, 2008, proposed instead to return the 300KW torch and have purchase payments to date treated as a form of "rent."  In the same letter, Solena noted that it was involved in a financing round led by Deutsche Bank AG (London) as placement agent, which was expected to close by the end of April.  See Letter dated Mar. 13, 2008, from Solena to Europlasma, Ex. C to Zimolzak Aff.

13.    In a letter dated April 3, 2008, Europlasma made a further proposal in an effort to settle this matter.  Specifically, Europlasma agreed to allow Solena until April 15, 2008 to make a final reduced payment of €150,000 and provide Europlasma a €300,000 promissory note as security for the return of the used 300KW torch in good condition, upon which Solena would receive a €30,000 credit against its next purchase of a plasma torch from Europlasma.  See Letter dated Apr. 3, 2008, from Europlasma to Solena, Ex. D to Zimolzak Aff.

14.    Solena Group failed to respond by April 15, 2008.  Solena Group also failed to respond to a renewed demand letter dated April 16, 2008, which requested a response no later than 5:00 p.m. EST on April 23, 2008.  See Letter dated Apr. 16, 2008, from Europlasma to Solena, Ex. E to Zimolzak Aff.; Letter dated June 6, 2008, from Europlasma to Solena, Ex. F to Zimolzak Aff.

15.    Through subsequent discussions with Solena's counsel, Europlasma learned that Solena was not in a position to return the 300KW torch (despite having previously offered to do so) or even to grant Europlasma a security interest in the torch.  See Letter dated June 6, 2008, from Europlasma to Solena, Ex. F to Zimolzak Aff.  Additional negotiations between the parties to resolve their dispute failed.  See id.; see also Velez Aff., Ex. 1 to Def's Mem. at ¶¶ 10-11 [R. 6-2].

16.    Europlasma filed this lawsuit alleging breach of the Note on June 24, 2008. To date, Europlasma has incurred costs of collection, including attorneys' fees and costs, in the amount of $40,198.35. See Zimolzak Aff. at ¶¶ 3-7.

### The Master Teaming Agreement

17.    On approximately May 29, 2007, more than seven months after Solena ordered the 300KW torch from Europlasma and more than three months after the 300KW torch had shipped, Europlasma and Solena entered into a Master Teaming Agreement for the principal purpose of enabling them "to work together to develop and implement Projects worldwide employing Solena's Technology utilizing Europlasma's torch systems . . . ." Master Teaming Agreement ("Teaming Agreement" or "Agreement"), Ex. 2 to Def's Mem. at ¶ 1.1 [R. 6-3]; Velez Aff., Ex. 1 to Def's Mem. at ¶ 7 [R. 6-2].

18.    The Teaming Agreement became effective on May 29, 2007, and specifies a term of three (3) years from the effective date. Teaming Agreement, Ex. 2 to Def's Mem. at p. 1, p. 6, ¶ 5.1 [R. 6-3].

19.    Section 1 of the Teaming Agreement sets forth the scope of the teaming arrangement. As discussed in that section, the rights and obligations of the parties are limited to only those expressly set forth in the Teaming Agreement. Id. at p. 5, ¶ 1.5. "Neither party shall have the authority to bind the other except to the extent authorized herein . . . ." Id.

20.    The scope of teaming with respect to equipment sale and purchase is discussed in Section 1.2 of the Teaming Agreement. Solena's purchase obligations under the Teaming Agreement are set forth in Section 1.2.1, which provides in relevant part as follows:

1.    **SCOPE OF TEAMING**

. . .

**1.2    Equipment Sale and Purchase**

. . .

1.2.1    Solena commits to treat Europlasma as its Preferred Provider of torch systems, and as such, <u>Solena commits to purchase all of the plasma torch systems from Europlasma</u> for Solena Projects utilizing Solena Technology <u>from the date of this agreement</u>.  Solena and Europlasma shall enter into a sale purchase agreement ("Sale Purchase Agreement") for each Solena Project.  The anticipated demand of torch systems for Solena Projects is included in Exhibit "A" for indicative reference.

Teaming Agreement at p. 2 [R. 6-3] (emphasis added).

21.    Europlasma's <u>sale</u> obligations under the Teaming Agreement are set forth in Section 1.2.2, which provides in relevant part as follows:

1.    **SCOPE OF TEAMING**

. . .

**1.2    Equipment Sale and Purchase**

1.2.2    In consideration for Solena treating Europlasma as its Preferred Provider of torch systems and its commitment to purchase all torch systems from Europlasma, Europlasma will provide discounted pricing for the purchase of multiple torch systems, as shown in the attached Exhibit "A" ("Multiple Torch Sale Pricing and Scope of Supply").

<u>Id.</u>

22.    Thus, Solena committed under the Teaming Agreement to treat Europlasma as its "Preferred Provider of torch systems" and to purchase all such systems needed for "Solena Projects utilizing Solena Technology from the date of [the Teaming Agreement]" -- i.e., from May 29, 2007, forward.  <u>Id.</u> at pp. 1-2.  In consideration for Solena's commitments in this regard,

Europlasma agreed to provide discounted pricing for Solena's torch purchases after May 29, 2007, in accordance with the terms of the Teaming Agreement. Id.

23.    Exhibit A to the Teaming Agreement, "Multiple Torch Sale Pricing," identifies the "anticipated demand of torch systems by Solena per year." Id. at p. 10. For each of the three years covered by the Teaming Agreement -- i.e., 2007, 2008 and 2009 -- Exhibit A lists the number and type of torch systems Solena anticipated ordering during that particular year. Id. Exhibit A notes that delivery time for each such system ordered "should be from 7 to 10 months average after order." Id.

24.    According to Exhibit A to the Teaming Agreement, Solena anticipated ordering two (2) 0.8MW torch systems and one (1) 2MW torch system in 2007, one (1) 0.8MW torch system and six (6) 2MW torch systems in 2008, and two (2) 0.8MW torch systems and six (6) 2MW torch systems in 2009. Teaming Agreement, Ex. A at p. 10 [R. 6-3]. Exhibit A also sets forth the preferred pricing to be offered by Europlasma for the referenced .08MW and 2MW torch systems, depending on the number of systems ordered during the three year term of the Teaming Agreement. Id. at p. 11. Exhibit A does not reference the 300KW torch purchased by Solena in 2006. Id. at pp. 10-11.

25.    Section 6 of the Teaming Agreement notes that Delaware law governs the interpretation of the Agreement and provides a dispute resolution mechanism for all claims or disputes arising out of or relating to the Agreement. Specifically:

6.    **APPLICABLE LAW AND RESOLUTION OF DISPUTES**

6.1    This Agreement shall be governed by and interpreted in accordance with the laws of the State of Delaware, United States of America, without regard to its conflict of laws, which for purposes  herein shall be deemed as "Applicable Law".

6.2    In the event of a controversy, claim or dispute arising out of or relating to this Agreement, the representatives of the Parties shall meet and confer in good faith negotiations with the object of reaching mutual agreement and a settlement.  If the Parties' representatives are unable to agree, such representatives shall promptly commence discussion with respect to resolving the dispute through non-binding alternative dispute resolution ("ADR") procedures fashioned by the representative themselves or with the assistance of persons or organizations experienced in ADR procedures such as the International Chamber of Commerce.

6.3    Any controversy, claim or dispute arising out of or relating to this Agreement, or the breach thereof, that the Parties can not amicably resolve under the procedures in Article 6.2, shall be settled by arbitration administered by the International Chamber of Commerce under its Commercial Arbitration Rules using an arbitrator that both Parties consent to in writing, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.  The place of arbitration shall be London, England and the arbitrator shall determine the matters in dispute in accordance with Applicable Law.  The Parties agree that the award of the arbitrator shall be binding and shall be the sole and exclusive remedy among them regarding claims, counterclaims, issues or accountings presented to the arbitrator.

Teaming Agreement at pp. 7-8 [R. 6-3].  According to the terms of the Teaming Agreement, the referenced ADR procedures would <u>not</u> apply to claims or disputes between the parties that did not arise out of or relate to the Agreement.  <u>Id.</u>

26.    The Teaming Agreement contains an integration clause.  Specifically, Section 10.1 provides that "[t]his Agreement constitutes the entire agreement between the Parties, relating to the subject matter hereof, and supersedes any previous agreements or understandings between them, whether oral or written."  Teaming Agreement at p. 8, ¶ 10.1 [R. 6-3].

27.    The Teaming Agreement contains a clause regarding amendments, which states that "[n]o amendments or additions to the Agreement shall be binding unless such amendments or additions are in writing and signed by the Parties."  Teaming Agreement at p. 8, ¶ 11.1 [R. 6-3].

Dated:  August 5, 2008

/s/  Joanne L. Zimolzak
Joanne L. Zimolzak, D.C. Bar No. 452035
Frank M. Rapoport, D.C. Bar No. 326512
MCKENNA LONG & ALDRIDGE LLP
1900 K Street, NW
Washington, D.C.  20006
(202) 496-7500
(202) 496-7756 (facsimile)
Attorneys for Plaintiff, Europlasma S.A.

# Exhibit 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

EUROPLASMA S.A.
6 Rue Lajaunie
33100 Bordeaux
France,

        Plaintiff,

v.

SOLENA GROUP, INC.
1900 K Street, N.W.
Suite 626
Washington, DC 20006,

        Defendant.

Case No.: 1:08-cv-01089 (HHK)

## AFFIDAVIT OF JOANNE L. ZIMOLZAK

Joanne L. Zimolzak, being duly sworn, and based upon personal knowledge deposes and says:

1.     I represent Europlasma S.A. ("Europlasma") in its breach of contract dispute with Solena Group, Inc. ("Solena") regarding Solena's failure to pay certain amounts due to Europlasma under a September 14, 2007 promissory note (the "Note"). See Plaintiff's Statement Of Material Facts As To Which There Is No Genuine Issue In Support Of Its Cross-Motion For Summary Judgment ("SMF") ¶¶ 7-10.  I submit this affidavit in support of Europlasma's Cross-Motion for Summary Judgment.

2.      I am a partner at McKenna Long & Aldridge LLP and am licensed to practice law in the District of Columbia since 1996. I am admitted to practice before the U.S. District Court for the District of Columbia. My practice focuses principally on complex business litigation, and I have handled complex litigation in federal and state courts throughout the country, both at the trial and appellate levels. I also have considerable experience handling commercial contract disputes.

3.      My hourly rate charge is $480 per hour. I have spent a total of 31.6 hours working on breach-of-contract-related proceedings in the above-captioned matter on behalf of Europlasma since May 2008. Europlasma has provided payment in the amount of $15,168 for my services rendered in collecting on the Note. See Invoices attached hereto as Exhibit A.

4.      My colleague, Frank M. Rapoport, has spent 11 hours of time assisting me during that same period. Mr. Rapoport is a senior partner at McKenna Long & Aldridge LLP and routinely counsels clients on breach of contract claims. Mr. Rapoport's hourly rate is $625 per hour. Europlasma has provided payment in the amount of $6,875 for Mr. Rapoport's services rendered in collecting on the Note. See Ex. A.

5.      Elisabeth L. Carrigan, a first-year litigation associate, has spent 63.5 hours of time assisting me and Mr. Rapoport during that same period. Ms. Carrigan's rate is $270 per hour. Europlasma has provided payment in the amount of $17,145 for Ms. Carrigan's services rendered in collecting on the Note. See Ex. A.

6.      Valerie T. Lam, a litigation paralegal, has spent 1.3 hours of time assisting me and Mr. Rapoport during that same period. Ms. Lam's rate is $210 per hour. Europlasma has provided payment in the amount of $273 for Ms. Lam's services rendered in collecting on the Note. See Ex. A.

7.      Upon information and belief, my rate, as well as the rates of Mr. Rapoport, Ms. Carrigan, and Ms. Lam, are reasonable based upon the amount in controversy and the typical rates charged in the District of Columbia for civil litigation attorneys and paralegals of good reputation at our respective levels of experience. Europlasma has also incurred costs in the amount of $737.35 in connection with these proceedings. See Ex. A. The total payment Europlasma has made in connection with collecting on the Note is $40,198.35. See Ex. A.

8.      Based on my experience handling commercial litigation matters, the amount of time that I, Mr. Rapoport, Ms. Carrigan, and Ms. Lam spent working on the above-captioned matter was reasonable, given the nature of the work involved and our respective levels of experience.

9.      I am personally familiar with all the work performed by Mr. Rapoport, Ms. Carrigan, and Ms. Lam, and reviewed the invoices sent monthly to our client, Europlasma, to determine their accuracy. The invoices attached hereto as Exhibit A accurately reflect the services provided to Europlasma by McKenna Long & Aldridge

LLP.[1]  Such invoices routinely are prepared in the ordinary course of our firm's business, and Europlasma's invoices were prepared in the ordinary course of our firm's business.

10.     Attached hereto as Exhibit B is a true and correct copy of an e-mail sent by André Jean Goimard of Europlasma to 'Yves Bannel' and 'Robert Do' of Solena on or about February 14, 2008, a copy of which is maintained in Europlasma's files in the ordinary course of business.

11.     Attached hereto as Exhibit C is a true and correct copy of a letter sent by Yves Bannel of Solena to André Jean Goimard of Europlasma on or about March 13, 2008, a copy of which is maintained in Europlasma's files in the ordinary course of business.

12.     Attached hereto as Exhibit D is a true and correct copy of a letter sent by André Jean Goimard of Europlasma to Robert T. Do and Yves Bannel of Solena on or about April 3, 2008, a copy of which is maintained in Europlasma's files in the ordinary course of business.

13.     Attached hereto as Exhibit E is a true and correct copy of a letter sent by James L. S. Cobb, counsel for Europlasma to Robert T. Do of Solena on or about April 16, 2008, a copy of which is maintained in Europlasma's files in the ordinary course of business.

---

[1]     Entries relating to services performed for Europlasma that are not related to this breach of contract dispute have been redacted, and the amount of time and fees associated with these additional services have been deducted.

14.    Attached hereto as Exhibit F is a true and correct copy of a letter sent by Joanne L. Zimolzak, counsel for Europlasma to Stanley S. Jutkowitz, counsel for Solena on or about June 6, 2008, a copy of which is maintained in Europlasma's files in the ordinary course of business.

I declare, under penalty of perjury, that the foregoing is true to the best of my knowledge and belief.

_____
Joanne L. Zimolzak


Subscribed and sworn to before me this 5th day of ~~July~~ August, 2008.

_____
Notary Public

# Exhibit A

# McKenna Long
## & Aldridge LLP
Attorneys at Law

Tel: 404.527.4000
www.mckennalong.com

*Remittance Address:*
P.O. Box 116573, Atlanta, GA 30368

Albany
Atlanta
Brussels
Denver
Los Angeles

New York
Philadelphia
San Diego
San Francisco
Washington, DC

ATTORNEY-CLIENT PRIVILEGED
TAX ID NO. 52-1237458

Europlasma SA
Attn: Mr. Andre-Jean  Goimard
6 rue Lajaunie
33 100 Bordeaux
France,

Client No.: 30426                    Invoice No.  599646
Matter No.: 30426.0001               Invoice Date: June 12, 2008
================================================================

    FOR PROFESSIONAL SERVICES RENDERED through May 31, 2008
    RE: LITIGATION

* * * * * * * * * * * SUMMARY OF ACTIVITY * * * * * * * * * * * *

| Name | Hours Worked | Billed Per Hour | Bill Amount |
|------|--------------|-----------------|-------------|
| F. Rapoport | 7.00 | 625.00 | 4,375.00 |
| J. Zimolzak | 6.50 | 480.00 | 3,120.00 |
| Total | 13.50 | | 7,495.00 |

TOTAL FEES:                                    $  7,495.00

T O T A L   T H I S   S T A T E M E N T :      $  7,495.00

Europlasma SA                        June 12, 2008            PAGE    2
MATTER NUMBER: 30426.0001
INVOICE NO.:  599646


                    DESCRIPTION OF SERVICES


05/20/08 J Zimolzak        .30 REVIEWED CLIENT DOCUMENTATION AND PREPARED
                               LIST OF ACTION ITEMS AND NEEDED INFORMATION
                               IN PREPARATION FOR INITIAL STRATEGY CALL WITH
                               CLIENT.

05/21/08 J Zimolzak        .20 PARTICIPATED IN TELEPHONE CONFERENCE CALL WITH
                               MR. FRANK RAPOPORT AND CLIENT REGARDING
                               INFORMATION NEEDED FOR ANALYSIS AND NEXT STEPS.

05/21/08 F Rapoport       3.00 PREPARE FOR AND ATTEND PHONE CALL WITH CLIENT.

05/22/08 F Rapoport       2.00 REVIEW CONTRACTS.

05/27/08 J Zimolzak       1.50 REVIEWED AND ANALYZED ISSUES RELATING TO DEMAND
                               LETTER AND STRATEGY, INCLUDING ANALYSIS OF
                               CLIENT PROVIDED DOCUMENTS AND RELATED ATTORNEY
                               CONFERENCE CALLS; CONDUCTED ANALYSIS REGARDING
                               POTENTIAL THEORIES OF RECOVERY.

05/28/08 J Zimolzak       1.70 CONDUCTED MULTIPLE TELEPHONE CONFERENCE CALLS
                               WITH MR. S. JUTKOWITZ (SOLENA COUNSEL)
                               REGARDING NEW PROPOSAL; PREPARED FOLLOW-UP
                               EMAIL COMMUNICATIONS REGARDING SAME; REVIEWED
                               AND ANALYZED SCHEDULE PROVIDED BY SOLENA
                               COUNSEL; REVIEWED ISSUES RELATING TO POSSIBLE
                               BANKRUPTCY SCENARIO; IDENTIFIED AND DIRECTED
                               FOLLOW-UP FACT-GATHERING REGARDING SAME.



Europlasma SA                        June 12, 2008            PAGE    3
MATTER NUMBER: 30426.0001
INVOICE NO.:  599646


05/30/08 J Zimolzak      1.30 PARTICIPATED IN TELEPHONE CONFERENCE CALL WITH
                              MR. GOIMARD REGARDING STATUS AND NEXT STEPS;
                              CONDUCTED FOLLOW-UP COMMUNICATION WITH MR. S.
                              JUTKOWSKI (SOLENA'S COUNSEL) REGARDING OFFER
                              AND NEGOTIATION; DRAFTED REPORT MEMORIALIZING
                              KEY PARTS OF SAME.

05/30/08 F Rapoport      2.00 TELEPHONE CALL WITH CLIENT, REVIEW SECURITY
                              OPTIONS.

# McKenna Long
# & Aldridge LLP

Attorneys at Law

Tel: 404.527.4000
www.mckennalong.com

*Remittance Address:*
P.O. Box 116573, Atlanta, GA 30368

| | |
|---|---|
| Albany | New York |
| Atlanta | Philadelphia |
| Brussels | San Diego |
| Denver | San Francisco |
| Los Angeles | Washington, DC |

```
                                ATTORNEY-CLIENT PRIVILEGED
                                TAX ID NO. 52-1237458


     Europlasma SA
     Attn: Mr. Andre-Jean  Goimard
     6 rue Lajaunie
     33 100 Bordeaux
     France,


     Client No.: 30426              Invoice No.  607204
     Matter No.: 30426.0001         Invoice Date: July 16, 2008
     ================================================================

         FOR PROFESSIONAL SERVICES RENDERED through June 30, 2008
         RE: LITIGATION

     * * * * * * * * * * * SUMMARY OF ACTIVITY * * * * * * * * * * * *

                              Hours          Billed              Bill
     Name                    Worked        Per Hour            Amount
     -------------------     --------      ---------       -----------

     F. Rapoport               4.00          625.00          2,500.00
     J. Zimolzak              22.50          480.00         10,800.00

     E.L. Carrigan            11.80          270.00          3,186.00

     ======================  ========      =========       ===========
     Total                    40.60                          17,784.00

     TOTAL FEES:                                          $ 17,784.00

     CHARGES:

         COPY CHARGES                             0.60
         LONG DISTANCE TELEPHONE                  3.99
         FILING / COURT FEES - - PAYEE: U.S. DISTRICT  350.00
         COURT FOR THE DISTRICT OF COLUMBIA CIVIL
         COMPLAINT FILING FEE.

     TOTAL CHARGES:                                       $    354.59

     LESS CREDIT ON ACCOUNT:                              $( 18,138.59)

     T O T A L  T H I S  S T A T E M E N T :             $       .00
```

Europlasma SA                          July 16, 2008              PAGE    2
MATTER NUMBER: 30426.0001
INVOICE NO.:   607204


                    DESCRIPTION OF SERVICES




06/06/08 J Zimolzak    .80 EXCHANGED EMAIL COMMUNICATIONS WITH MR. A.
                           GOIMARD; REVISED AND FINALIZED DEMAND LETTER IN
                           ACCORDANCE WITH CLIENT AND OTHER COMMENTS;
                           SUPERVISED FINALIZING AND FORWARDING LETTER TO
                           MR. S. JUTKOWITZ.

06/09/08 J Zimolzak    .40 PARTICIPATED IN TELEPHONE CONFERENCE CALL
                           WITH MR. S. JUTKOWITZ REGARDING RESPONSE TO
                           DEMAND LETTER; ANALYZED AND REVIEWED ISSUES
                           RELATING TO SAME, INCLUDING NEXT STEPS AND
                           STRATEGY.

Europlasma SA                    July 16, 2008          PAGE   3
MATTER NUMBER: 30426.0001
INVOICE NO.:  607204



06/10/08 C Graham       .20 OFFICE CONFERENCE WITH JOANNE ZIMOLZAK;  E-MAIL
                            REVIEW/REPLY REGARDING STRATEGY;  FOLLOW-UP
                            WITH FRANK RAPOPORT.

06/11/08 J Zimolzak     .50 ANALYZED ISSUES RELATING TO LITIGATION
                            STRATEGY, INCLUDING ATTORNEY CONFERENCES
                            REGARDING SAME; DEVELOPED LITIGATION STRATEGY.



06/12/08 F Rapoport    2.00 EXPLORE LITIGATION OPTIONS.

06/13/08 J Zimolzak    1.20 REVIEWED AND ANALYZED EMAIL COMMUNICATION
                            RESPONSE FROM MR. S. JUTKOWITZ; DEVELOPED
                            LITIGATION STRATEGY, INCLUDING ANALYSIS
                            REGARDING LIKELY COMPLAINT.

06/16/08 J Zimolzak    1.90 PARTICIPATED IN TELEPHONE CONFERENCE CALL
                            WITH MR. S. JUTKOWITZ REGARDING
                            COUNTER-OFFER; ANALYZED AND DEVELOPED
                            LITIGATION STRATEGY; PREPARED BUDGET FOR SAME.

06/16/08 F Rapoport    2.00 REVIEW LITIGATION OPTIONS.

06/17/08 J Zimolzak    1.80 CONTINUED WORK ON DRAFTING LITIGATION
                            STRATEGY AND BUDGET, INCLUDING PARTICIPATED
                            IN RELATED ATTORNEY TELEPHONE CONFERENCE
                            CALLS; DRAFTED COVER MEMORANDUM TO CLIENT
                            FORWARDING SAME; CONTINUED SUBSTANTIVE REVIEW
                            AND ANALYSIS REGARDING SUMMARY JUDGMENT
                            STRATEGY, INCLUDING AS TO ATTORNEYS' FEES.

Europlasma SA                          July 16, 2008            PAGE    4
MATTER NUMBER: 30426.0001
INVOICE NO.:  607204


06/19/08 J Zimolzak      .50  CONDUCTED EMAIL COMMUNICATIONS WITH MR. A.
                              GOIMARD REGARDING LITIGATION STRATEGY IN
                              LIGHT OF NEW DOCUMENTS.

06/19/08 E Carrigan     2.60  RESEARCHED REQUIREMENTS FOR COMMENCING ACTION
                              IN THE UNITED STATES DISTRICT COURT FOR THE
                              DISTRICT OF COLUMBIA.

06/20/08 J Zimolzak     5.50  REVIEWED AND ANALYZED ISSUES RELTING TO
                              JURISDICTION AND VENUE FOR COMPLAINT,
                              INCLUDING RELEVANT STATUTORY PROVISIONS;
                              REVIEWED AND ANALYZED CASELAW RELATING TO
                              PERMISSION NOTE ENFORCMENT; DRAFTED
                              COMPLAINT.

06/23/08 J Zimolzak      .80  REVISED DRAFT COMPLAINT AND FORWARDED SAME TO
                              CLIENT FOR REVIEW WITH COVER EMAIL
                              COMMUNICATION; SUPERVISED WORK PREPARING
                              ANCILLARY FILING.

06/23/08 E Carrigan      .60  PREPARED INITIAL DOCUMENTS FOR FILING.

06/24/08 J Zimolzak     1.40  SUPERVISED ADDITIONAL REVSIIONS TO COMPLAINT
                              AND PREPARATION OF EXHIBITS; CONDUCTED EMAIL
                              COMMUNICATIONS WITH MR. A. GOIMARD REGARDING
                              SAME; REVIEWED AND EDITED ANCILLARY FILING
                              DOCUMENTS; IDENTIFIED SERVICE AGENT AND
                              SUPERVISED PREPARATION OF SUMMONS; SUPERVISED
                              FILING OF COMPLAINT.

06/24/08 E Carrigan     4.70  PREPARED SUMMONS, COMPLAINT AND ASSOCIATED
                              DOCUMENTS FOR FILING; REVIEWED LOCAL RULES ON
                              FILING REQUIREMENTS; CONFERRED WITH CLERK
                              REGARDING ELECTRONIC FILING REQUIREMENTS AND
                              HARD COPY SUBMISSIONS OF SUMMONS AND
                              COMPLAINT.

Europlasma SA                          July 16, 2008          PAGE    5
MATTER NUMBER: 30426.0001
INVOICE NO.:   607204


06/25/08 J Zimolzak     1.80 SUPERVISED SERVICE OF SUMMONS AND COMPLAINT;
                             CONDUCTED FOLLOW-UP CORRESPONDENCE WITH MR. A.
                             GOIMARD REGARDING SAME; CONDUCTED
                             CORRESPONDENCE WITH MR. S. JUTKOWITZ (SOLENA
                             COUNSEL) FORWARDING SAME; CONDUCTED ADDITIONAL
                             ANALYSIS REGARDING TIMING AND SUBSTANCE OF
                             SUMMARY JUDGMENT MOTION; SUPERVISED WORK
                             REGARDING SAME.

06/25/08 E Carrigan     1.80 PREPARED SUMMONS AND COORDINATED SERVICE OF
                             SUMMONS AND COMPLAINT ON DEFENDANT.

06/30/08 J Zimolzak      .50 SUPERVISED CONTINUED WORK REGARDING SUMMARY
                             JUDGMENT MOTION, INCLUDING IDENTIFICATION OF
                             NEW RESEARCH ISSUE AND SCHEDULING CONCERNS.

06/30/08 E Carrigan     2.10 RESEARCHED SUMMARY JUDGMENT STANDARD AND
                             WHETHER A REASONABLE ATTORNEY'S FEES
                             PROVISION COULD CREATE A QUESTION OF MATERIAL
                             FACT THAT WOULD DESTROY SUMMARY JUDGMENT;
                             FILED RETURN OF SERVICE WITH THE COURT.

# McKenna Long
# & Aldridge LLP
Attorneys at Law

Albany
Atlanta
Brussels
Denver
Los Angeles

New York
Philadelphia
San Diego
San Francisco
Washington, DC

Tel: 404.527.4000
www.mckennalong.com

*Remittance Address:*
P.O. Box 116573, Atlanta, GA 30368

ATTORNEY-CLIENT PRIVILEGED
TAX ID NO. 52-1237458

Europlasma SA
Attn: Mr. Andre-Jean  Goimard
6 rue Lajaunie
33 100 Bordeaux
France,

Client No.: 30426                    Invoice No. 607209
Matter No.: 30426.0001               Invoice Date: August 5, 2008
===============================================================

      FOR PROFESSIONAL SERVICES RENDERED through July 31, 2008
      RE: LITIGATION


* * * * * * * * * * SUMMARY OF ACTIVITY * * * * * * * * * * * * *

| Name | Hours Worked | Billed Per Hour | Bill Amount |
|------|-------|-------|-------|
| J. Zimolzak | 9.50 | 480.00 | 4,560.00 |
| E.L. Carrigan | 51.70 | 270.00 | 13,959.00 |
| V.T. Lam | 1.30 | 210.00 | 273.00 |
| Total | 63.00 | | 19,142.00 |

TOTAL FEES:                                          $ 19,142.00

CHARGES:

      COPY CHARGES                        0.30
      DELIVERY SERVICE/MESSENGER         61.25
      WESTLAW RESEARCH                  321.21

TOTAL CHARGES:                                   $    382.76

Europlasma SA                          August 5, 2008              PAGE   2
MATTER NUMBER: 30426.0001
INVOICE NO.: 607209


        TOTAL FEES AND CHARGES:                    $ 19,524.76

        LESS CREDIT ON ACCOUNT:                    $( 19,524.76)

        **TOTAL BALANCE DUE:**                     $      0.00

Europlasma SA                                      August 5, 2008              PAGE    3
MATTER NUMBER: 30426.0001
INVOICE NO.: 607209


                         DESCRIPTION OF SERVICES


07/01/08 J Zimolzak      .30  REVIEWED COURT NOTIFICATION; SUPERVISED WORK
                              ON MOTION FOR SUMMARY JUDGMENT.

07/01/08 E Carrigan      4.80  REVIEWED CASE LAW ON STANDARD FOR SUMMARY
                              JUDGMENT IN FEDERAL COURT; RESEARCHED BREACH OF
                              PROMISSORY NOTE AND BREACH OF CONTRACT CLAIMS
                              UNDER DELAWARE LAW.

07/03/08 E Carrigan      6.10  RESEARCH SUMMARY JUDGMENT ISSUES; DRAFTED
                              MOTION FOR SUMMARY JUDGMENT.

07/08/08 E Carrigan      8.80  REVIEWED AND REVISED DRAFT MOTION FOR SUMMARY
                              JUDGMENT.

07/10/08 J Zimolzak      2.10  REVIEWED AND EDITED MOTION FOR SUMMARY
                              JUDGMENT; DIRECTED ADDITIONAL RESEARCH
                              REGARDING SAME; PARTICIPATED IN TELEPHONE
                              CONFERENCE CALL WITH SOLENA COUNSEL REGARDING
                              EXTENSION; CONDUCTED EMAIL COMMUNICATIONS TO
                              CLIENT DISCUSSING SAME.

07/11/08 J Zimolzak      .80  REVIEWED ISSUES RELATING TO PREPARATION OF
                              FEE AFFIDAVIT, INCLUDING RELATED
                              COMMUNICATIONS; CONTINUED WORK ON MOTION FOR
                              SUMMARY JUDGMENT; REVIEWED COURT FILINGS
                              (CONSENT MOTION).

07/11/08 E Carrigan      1.50  RESEARCHED STANDARD FOR DETERMINATION OF
                              REASONABLE ATTORNEYS' FEES UNDER DELAWARE
                              CONTRACT LAW AND DISTRICT OF COLUMBIA LAW;
                              RESEARCHED CHOICE OF LAW ISSUES REGARDING
                              SAME.

07/14/08 J Zimolzak      .20  REVIEWED COURT FILING; SUPERVISED CONTINUED
                              WORK REGARDING MOTION.

07/14/08 E Carrigan      1.90  RESEARCHED FOR AND UPDATED MOTION FOR SUMMARY
                              JUDGMENT REGARDING REASONABLE ATTORNEYS' FEES.

Europlasma SA                        August 5, 2008            PAGE    4
MATTER NUMBER: 30426.0001
INVOICE NO.: 607209


07/16/08 J Zimolzak      .50 REVISED AND EDITED DRAFT MOTION FOR SUMMARY
                             JUDGMENT, INCLUDING RELATED CASELAW REVIEW.

07/18/08 J Zimolzak     2.40 REVIEWED AND ANALYZED SOLENA'S MOTION TO
                             DISMISS AND RELATED EXHIBITS; DEVELOPED
                             RESPONSE STRATEGY, INCLUDING RELATED ATTORNEY
                             TELEPHONE CONFERENCE CALLS; DRAFTED
                             MEMORANDUM TO CLIENT SETTING FORTH SAME.

                         REDACTED

07/21/08 J Zimolzak      .40 REVIEWED ISSUES REGARDING OPPOSITION BRIEF,
                             INCLUDING PARTICIPATED IN RELATED ATTORNEY
                             TELEPHONE CONFERENCE CALLS; CONDUCTED EMAIL
                             COMMUNICATIONS WITH MR. A. GOIMARD REGARDING
                             SAME.

07/21/08 E Carrigan     1.80 RESEARCHED CIRCUMSTANCES IN WHICH MOTION TO
                             DISMISS CONVERTED INTO MOTION FOR SUMMARY
                             JUDGMENT; CONFERRED WITH COUNSEL REGARDING
                             SAME; CONFERRED WITH THE COURT REGARDING THE
                             SUBSTANCE OF DOCKET ENTRY 7; REVIEWED CLIENT
                             CORRESPONDENCE REGARDING SUBSTANCE OF TEAMING
                             AGREEMENT.

07/23/08 E Carrigan     6.30 DRAFTED CONSENT MOTION FOR ENLARGEMENT OF
                             TIME TO RESPOND TO MOTION TO DISMISS;
                             CONFERRED WITH COUNSEL REGARDING CASE
                             STRATEGY IN OPPOSITION TO MOTION TO DISMISS;
                             BEGAN RESEARCH IN SUPPORT OF OPPOSITION OF
                             MOTION TO DISMISS AND THE CONVERSION OF A
                             MOTION TO DISMISS INTO A MOTION FOR SUMMARY
                             JUDGMENT WHEN PARTY INTRODUCES FACTS OUTSIDE
                             OF THE PLEADINGS.

07/24/08 J Zimolzak      .10 CONTINUED SUPERVISING WORK ON RESPONSE TO
                             MOTION TO DISMISS, INCLUDING REVIEW OF COURT
                             ORDER REGARDING SCHEDULE FOR SAME.

Europlasma SA                           August 5, 2008              PAGE    5
MATTER NUMBER: 30426.0001
INVOICE NO.: 607209


07/24/08 E Carrigan      4.70 FINALIZED CONSENT MOTION; CONFERRED WITH
                              COURT REGARDING ELECTRONIC FILING METHODS;
                              FILED CONSENT MOTION WITH DISTRICT COURT;
                              DRAFTED OPPOSITION TO MOTION TO DISMISS AND
                              CONDUCTED RESEARCH REGARDING SAME.

07/24/08 V Lam           1.30 REVIEWED ELECTRONIC FILING PROCEDURE FOR U.S.
                              DISTRICT COURT FOR D.C.; PROOFREAD CONSENT
                              MOTION FOR ENLARGEMENT OF TIME AND ORDER;
                              PREPARED DOCUMENTS FOR FILING AND ELECTRONIC
                              FILING OF SAME PER MS. CARRIGAN.

07/28/08 J Zimolzak      1.20 REVIEWED ISSUES RELATING TO FACTUAL SUPPORT FOR
                              MOTION AND OPPOSITION; CONDUCTED FOLLOW-UP
                              REGARDING SAME, INCLUDING EMAIL COMMUNICATION
                              TO MR. A. GOIMARD.

07/28/08 E Carrigan      4.70 UPDATED DRAFT OPPOSITION TO MOTION TO DISMISS
                              AND CROSS-MOTION FOR SUMMARY JUDGMENT;
                              CONDUCTED RESEARCH REGARDING SAME.

07/29/08 E Carrigan      7.30 UPDATED DRAFT OPPOSITION TO MOTION TO DISMISS
                              AND CROSS-MOTION FOR SUMMARY JUDGMENT;
                              COMPLETED RESEARCH REGARDING SAME; DRAFTED
                              AFFIDAVITS IN SUPPORT OF CROSS-MOTION FOR
                              SUMMARY JUDGMENT AND OPPOSITION TO MOTION TO
                              DISMISS.

07/30/08 E Carrigan      1.90 REVIEWED AND REVISED OPPOSITION TO MOTION TO
                              DISMISS AND CROSS-MOTION FOR SUMMARY JUDGMENT.

07/31/08 J Zimolzak      1.50 REVIEWED, REVISED AND EDITED OPPOSITION AND
                              MOTION TO DISMISS; DIRECTED ADDITIONAL WORK
                              REGARDING SAME.

07/31/08 E Carrigan      1.90 REVIEWED AND REVISED OPPOSITION TO MOTION TO
                              DISMISS AND CROSS-MOTION FOR SUMMARY
                              JUDGMENT; REVIEWED AND REVISED STATEMENT OF
                              UNDISPUTED MATERIAL FACT; CONFERRED WITH
                              COUNSEL REGARDING SAME.

# Exhibit B

**Zimolzak, Joanne**

---

**De :** André-Jean Goimard
**Envoyé :** jeudi 14 février 2008 11:29
**À :** 'Yves Bannel'; 'Robert Do'
**Objet :** TR: Galicia torches & payments

Dear sirs,

As you know, you failed to pay the promissory note amount 398 461.74 € due on January 10, 2008.
You have requested an extension for another 45 days ie up to March 25,2008 which I could't accept without partial payment of minimum 120 000 euros.

I did not get any answer/comment/ acceptance from your side on this matter.

Our auditors are starting their control end February.
Our next board is this evening French time – ie this morning US time.

I shall inform the Board of this unexpected payment failure of Solena.
We shall have to make provision in our 2007 accounts on the unpaid amount.

This means too, we shall not be allowed to trade with SOLENA as long as the full payment will not be recovered and that for any other order a L/C will be mandatory.

Additionally, without strong evidence of incoming payment (partial payment was a good response) I am pretty sure I shall be instructed by the board to sue Solena to recover the due amount.

I instruct there so Nicolas not to make any commitment for Europlasma toward Solena as long as this matter is not solved.

Best Regards
André-Jean GOIMARD
Directeur Général Délégué
*EUROPLASMA*

**De :** Nicolas PLANTY
**Envoyé :** jeudi 14 février 2008 09:37
**À :** André-Jean Goimard

---

**De :** Sylvain Motycka [mailto:smotycka@solenagroup.com]
**Envoyé :** mercredi 13 février 2008 22:22
**À :** Nicolas PLANTY
**Cc :** Yves Bannel
**Objet :** Galicia torches

Nicolas,

Comme tu le sais, nous avons démarré le FEED pour le projet de Galice, qui est un « petit » projet dans le sens où il ne gazéifie que 6 à 7 tonnes par heure.

Nous aurons donc besoin d'un système PHS (3+1 torches) dont la puissance est de l'ordre de 700 à 800 kW. Notre MTA Solena - Europlasma mentionne 2 MW et 800 kW, mais votre site web indique maintenant aussi une possibilité à 700 kW.

1. Quelle différence de prix y a-t-il entre 700 et 800 kW ?
2. Combien de temps faut-il envisager entre la signature du contrat et la réception du PHS en Galice ?

Merci de ton support,
A bientôt,
Sylvain

# Exhibit C



André Jean Goimard
Area Manager
Europlasma, S.A.
6 Rue Lapanie
33100 Bordeaux

Madrid, March 13th, 2008

Dear André Jean,

Further to our telephone conversation, Solena Group, Inc. ("Solena") would like to describe for Europlasma the series of events related to the plasma torch purchased for the Puerto Rico (the "Puerto Rico torch"), and propose the following measures:

-   During its negotiations with PRIDCO (the Puerto Rico Industrial Development Corporation), Solena has been unable to unblock the grant funding theoretically committed to Solena due to a myriad bureaucratic obstacles. These problems with PRIDCO have convinced Solena to cancel the Puerto Rico R&D facility.

-   Consequently, Solena proposes to return, at our expense, the Puerto Rico torch to Europlasma, and to affect the payments already made by Solena as a "lease or rent" of the torch. When we next meet with you to present our project development program (as described below) we should be able to jointly find a formal solution to close this unfortunate Puerto Rico operation.

Solena is currently immersed in a financing round, led by Deutsche Bank AG (London) as placement agent, which we estimate will be closed by the end of April. The funds raised will be used to accelerate the last stages of development of a number of Solena projects, as well as for corporate purposes including building a demonstration facility. In this respect, Solena has developed a strategic partnership with Rentech, Inc. a Fischer-Tropsch technology development company, who has a demonstration facility in Colorado, USA, and wants to integrate a Solena reactor into said facility. We are yet to confirm the size of reactor, and consequently the plasma torches required for this facility.

Once Solena closes the financing round, and as expressed above, we would like to take the opportunity to visit you and present to you our project development program with the list of projects Solena will be developing over the next 12 to 18 months, and the torch requirements for each. One of these projects is the Galicia Project in As Somozas (A Coruña, Spain), which is fully permitted, is approaching financial close (with public grants already approved by the regional government), and for which Solena has already signed a purchase order for a reactor (engineering phase already under way), which requires a set of Type C Europlasma torches. Another project, also fully permitted, is the Cordoba Project which requires a set of Type D Europlasma torches.

We hope that our proposal is agreeable to you. Solena has the deepest desire to continue working in partnership with Europlasma as our preferred torch supplier. We are therefore at

your full disposal to discuss this proposal in further detail and, as mentioned above, present to you Solena's development plan for the next 18 months.

Kindest regards,

Yves Bannel
Executive Vice President and Director for Europe
Solena Group, Inc.

# Exhibit D



SOLENA Group
1900 K Street NW
Suite 626
Washington DC 20006
USA

Copy to SOLENA
C/Hortaleza 106-6 D
28004 MADRID
ESPAGNE

Registered Letters

Bordeaux, April 3rd  2008

To the attention of Mr Robert T. DO and Yves BANNEL,

Dear Sirs,

   We thank you for your letter dated march 13 through which you propose to send us back the equipment we sold you in 2006.

   We sum up hereunder the different steps of this order.

You have placed your Purchase order n° 103 on octobe 3rd 2006 for one 300KW Non transferred Plasma Torch excluding spare parts, commissioning with following payment terms :

- 10% upon order ie 53 000€ (we received 47049.58 + 4766.00 = 51 815.56€ short of 1 184.44€ on our invoice n°280 dated dec 20,2006)
- 30% ie 159 000€ at torch Bill of Lading (we received100 000€ short of 59 000€ on our invoice n°281 dated dec 20, 2006)
- 40% ie 212 000€ at torch system Bill of Lading ( no payment received on our invoice n°282 dated dec 20, 2006)
- 20% ie 106 000€ at equipment acceptance and not latter than 90 days after landin in Porto Rico ( no payment received on our invoice n°308)
- Freight to Porto Rico at SOLEAN expense (no payment received on our invoice n°297 dated feb 2, 2007 amounting to 16 332€)



S.A. au capital de 11 129 752 € - R.C.S. Mont de Marsan B 384 256 095 -
Siège: 471, route de Cantegrit Est - BP 23 – 40110 Morcenx
Bureaux: 6 Rue Lajaunie - 33100 Bordeaux
Tél. 33 (0)5 56 49 70 00 - Fax. 33 (0)5 56 49 70 19 -
Site Web : http ://www.europlasma.com

Payments are short of an aggregated amount of 394 516,44 euros.

During our December 2007 negotiations, you agree to pay this amount with late interests for a new total of 398 461.74€ through a Promissory Note due on January 10, 2008 as equipments have been delivered on time without any discrepancy from order.

This Promissory Note has been remitted to your bank M&T Bank 25S. Charles Street Baltimore Maryland 21201 USA.

This Promissory Note has not been paid on due time.

You have asked for an extension of another 45 days ie up to March 25, 2008.
We have answered by our mail dated February 14, 2008 that we could not extend our credit without at least a partial payment.

We did not receive any answer to this proposal.

On March 13, 2008 you proposed us through your letter to send us back this 300KW torch system which has not been used from your side and to affect the payments already made by SOLENA as a lease or a rent of the torch system.

We did not answer to your proposal at once as we were on the verge to sue your company to recover our unpaid invoices.

We have now analyzed our cost expenses and estimated the chances we have to sell back such second hand torch system with same electrical characteristics ( Rated voltage – frequency…..) and the delay we may need to succeed such sale.

The best proposal we can offer you is the following :

- Immediate payment of 150 000€ to prove your commitment to solve this matter enabling us to be confident in the delivery back to our plant of the equipments in perfect condition with no missing parts.
- Sending of a new promissory note amounting to 300 000 € with a payment date of August 31, 2008 to secure us in case the equipments are not remitted back o us by July 31 2008 free of charge.
- Upon receipt of the equipments and upon acceptance of those after control of quantity and condition, we shall send back to you the original promissory note and issue to you a credit note of 30 000 € to be used as a voucher to be used as a price reduction on your first next order for Plasma Torch (this voucher does not apply for studies nor design works nor assistance).

The payment received by Europlasma will be considered by both parties as lease of the 300KW torch system.

This proposal is valid up to april 15, 2008 for your written acceptance with a payment of 150 000 € received on our bank account before april 25, 2008.

Best Regards

André-Jean GOIMARD
Directeur Général Délégué

# Exhibit E



WYRICK
ROBBINS
YATES
& PONTON
LLP

ATTORNEYS AT LAW

The Summit
4101 Lake Boone Trail
Suite 300
Raleigh, NC 27607.7506

PO Drawer 17803
Raleigh, NC 27619

ph 919.781.4000
fax 919.781.4865
www.wyrick.com

April 16, 2008

**VIA OVERNIGHT DELIVERY**

Solena Group
1900 K Street NW, Suite 626
Washington, DC 20006
Attn: Dr. Robert T. Do, Chief Executive Officer

Re:    Europlasma, S.A.

Dear Sir:

We are writing on behalf of our client, Europlasma, S.A. with regard to the 300KW Plasma Torch purchased by Solena Group, and the Promissory Note made by Solena Group to Europlasma, dated September 14, 2007, in the principal amount of €394,517, which was due and payable in full January 10, 2008.

Solena Group has defaulted on its payment of the Promissory Note, and the amount outstanding, including all accrued interest, has been accelerated and is due and payable.

In its letter dated February 14, 2008, Europlasma offered to extend payment of the Note if Solena Group would make at least partial payment of the outstanding amount due. Instead of accepting Europlasma's offer, Solena Group proposed instead to return the Plasma Torch and have purchase payments to date treated as a form of "rent" instead of honoring its commitment to pay for its purchase of the Torch.

Europlasma has no desire and no obligation to repurchase used equipment. However, in its letter dated April 3, 2008, in a good faith effort to settle this matter and give confidence to future business relations with your company, Europlasma again proposed extremely reasonable terms to settle this matter: giving you until April 15, 2008 to make a final reduced payment of €150,000, and provide Europlasma a €300,000 promissory note as security for the return of the used Torch in good condition, upon which Solena Group would receive a €30,000 credit against its next purchase of a Plasma Torch from Europlasma.

Our client did not receive a response from Solena Group by April 15, 2007. Accordingly, unless you accept Europlasma's April 3 offer by wiring your payment of €150,000 to Europlasma on or before 5:00 p.m. EDT on April 23, 2008, followed by return of the Torch, at your expense, secured against damage by a €300,000 promissory note, legal action will be instituted against you

532733v1

Solena Group
April 16, 2008
Page 2


for the full amount of the indebtedness plus all costs of collection, including reasonable attorney fees.

We urge you to give this matter your immediate attention, and look forward to hearing from you and learning of your client's decision.

Very truly yours,

Wyrick Robbins Yates & Ponton LLP

James L. S. Cobb

cc:     André-Jean Goimard
        Benjamin N. Thompson

20288.2-514553 v3

FedEx | Ship Manager | Label 798?21248218                                   Page 1 of 1

From:   Origin ID: SOPA   (919)781-4000
Sandra Guastaferro
Wyrick Robbins Yates & Ponton
4101 Lake Boone Trail
Suite 300
Raleigh, NC 27607





Ship Date: 16APR08
ActWgt: 1 LB
System#: 9710091/INET8011
Account#: S *********

Delivery Address Bar Code

Ref #      20313.1
Invoice #
PO #
Dept #

CLS128707/21/24

SHIP TO: (202) 682-2405          BILL SENDER

**Dr. Robert R. Do**
**Solena Group**
**1900 K ST NW STE 626**
**NW,**
**WASHINGTON, DC 200061184**



TRK#   7989 2124 8218
0201

THU - 17APR          A1

PRIORITY OVERNIGHT

**20006**

DC-US

IAD

# NE BZSA



---

**Shipping Label: Your shipment is complete**

1. Use the 'Print' feature from your browser to send this page to your laser or inkjet printer.

2. Fold the printed page along the horizontal line.

3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

**Warning: Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.**

Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com. FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is $500, e.g. jewelry, precious metals, negotiable instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

# Exhibit F

Albany
Atlanta
Brussels
Denver
Los Angeles

# McKenna Long
# & Aldridge LLP
Attorneys at Law

1900 K Street, NW • Washington, DC 20006-1108
Tel: 202.496.7500 • Fax: 202.496.7756
www.mckennalong.com

New York
Philadelphia
Sacramento
San Diego
San Francisco
Washington, D.C.

JOANNE L. ZIMOLZAK
(202) 496-7375

EMAIL ADDRESS
jzimolzak@mckennalong.com

June 6, 2008

**VIA FACSIMILE AND REGULAR MAIL**

Stanley S. Jutkowitz, Esq.
Seyfarth Shaw LLP
815 Connecticut Avenue, N.W.
Suite 500
Washington, DC 20006-4004

      Re:    Europlasma, S.A.

Dear Mr. Jutkowitz:

      We are writing on behalf of our client, Europlasma, S.A., with regard to the 300KW Plasma Torch purchased by Solena Group and the Promissory Note that Solena Group subsequently made in favor of Europlasma, dated September 14, 2007, in the principal amount of €394,517. The Promissory Note was due and payable in full January 10, 2008. Solena Group defaulted on its payment of the Promissory Note, and the amount outstanding, including all accrued interest, has been accelerated and is due and payable.

      By letter dated February 14, 2008, Europlasma offered to extend payment of the Promissory Note if Solena Group would make at least partial payment of the outstanding amount due. Solena Group did not accept this offer, but in a letter dated March 13, 2008, proposed instead to return the Plasma Torch and have purchase payments to date treated as a form of "rent." In the same letter, Solena Group noted that it was involved in a financing round led by Deutsche Bank AG (London) as placement agent, which was expected to close by the end of April. As noted, however, Solena Group did not ask Europlasma to agree to forbear pending receipt of this financing, but instead offered to return the Plasma Torch at its own expense.

      In a letter dated April 3, 2008, Europlasma again proposed extremely reasonable terms in a good faith effort to settle this matter. Specifically, Europlasma agreed to allow Solena Group until April 15, 2008 to make a final reduced payment of €150,000 and provide Europlasma a €300,000 promissory note as security for the return of the used Torch in good condition, upon which Solena Group would receive a €30,000 credit against its next purchase of a Plasma Torch from Europlasma.

Stanley S. Jutkowitz, Esq.
June 6, 2008
Page 2

Solena Group failed to respond by April 15, 2007. Solena Group also failed to respond to a subsequent demand letter dated April 16, 2007, which requested a response no later than 5:00 p.m. EST on April 23, 2008. Thereafter, we were retained by Europlasma to protect its interests.

We since have spoken with you several times in an effort to resolve this matter. Initially, you explained that Solena Group now expects the current equity financing round led by Deutsche Bank AG (London) to close by June 30, 2008, or shortly thereafter. Accordingly, you requested on behalf of Solena Group that Europlasma continue to forbear through the date of closing, at which time Solena Group would pay its debt in full.

In our subsequent discussions, we advised that Europlasma is willing to continue to forbear, so long as Solena Group is willing to secure the debt owed and/or otherwise improve Europlasma's position. Thus, we asked whether Solena Group would be willing to pay a portion of the debt owed as a sign of its good faith; you stated that Solena Group would not, due to a lack of funds. We asked whether Solena Group would be willing to provide a security interest in the Plasma Torch; you stated that Solena Group would not, as all of its assets (including the Torch) already are pledged to four secured lenders, and the governing security agreement purportedly precludes Solena Group from providing a second lien.

We also asked whether Solena Group would be willing to provide a confession of judgment, so as to enable Europlasma to expeditiously record a judgment lien, although we agreed to forbear from enforcing the judgment until July or thereafter (depending on the outcome of the current equity financing round). You stated that Solena Group would not, for two reasons. First, you stated that a confession of judgment might prejudice the current equity financing proceedings, even though you acknowledged that the financier already is aware of the debt owed by Solena Group to Europlasma. Later, you advised that the referenced security agreement precludes Solena Group from agreeing to confess judgment. Nonetheless, you proposed having Solena Group execute a confessed judgment promissory note, which presumably would supersede the existing Promissory Note as to which Solena Group has defaulted, and which would allow Europlasma eventually to obtain a confession of judgment, but not before September 30, 2008.

Frankly, Solena Group's current proposal does not provide Europlasma with much protection. Further, it is difficult to understand Solena Group's position that, on the one hand, it is precluded by agreement from confessing judgment, but on the other, it can provide a confessed judgment promissory note that would have the same effect if the financing has not closed by September 30, 2008. And, although there appears to be no good reason for Solena Group to continue to keep our client's Torch, any deal with Puerto Rico (or elsewhere) being at best not imminent and probably speculative, it now appears based on your representations that Solena Group is unable to return the Torch to Europlasma. Rather, contrary to what Solena Group proposed just a few months ago, the Torch is pledged in favor of four secured lenders, and your client therefore cannot return it or otherwise fulfill the proposal made in its March 13, 2008 letter.

Stanley S. Jutkowitz, Esq.
June 6, 2008
Page 3

In sum, you have advised us that Solena Group cannot return the Torch and is unwilling either to make any partial payment or to provide any security regarding the debt owed to Europlasma.  Under the circumstances, we believe that Europlasma has no choice but to seek court intervention.  Accordingly, unless Europlasma receives full payment on or before 5:00 p.m. EST on June 13, 2008, we intend to institute legal action against Solena Group for the full amount of the indebtedness plus all costs of collection, including reasonable attorneys fees.

If you wish to discuss these matters further, we are willing to meet with you and a representative of Solena Group in Washington, D.C., with our client participating by telephone. Otherwise, we will await Solena Group's response before taking further action to protect Europlasma's interests.

Kindly be governed accordingly.

Very truly yours,

Joanne L. Zimolzak

cc:    André -Jean Goimard
       Frank Rapoport, Esq.

# Exhibit 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

EUROPLASMA S.A.

        Plaintiff,

v.                                                                    Case No.: 1:08-cv-01089 (HHK)

SOLENA GROUP, INC.

        Defendant.

---

### ORDER

Upon consideration of Defendant Solena Group, Inc.'s ("Solena's") Motion to Dismiss Complaint Or, In the Alternative, to Stay and to Compel Arbitration and supporting points and authorities, Plaintiff Europlasma S.A.'s ("Europlasma's") Opposition to Defendant's Motion to Dismiss Complaint Or, In the Alternative, to Stay and to Compel Arbitration and Cross-Motion for Summary Judgment and the supporting and opposing points and authorities, including the Affidavit of Joanne L. Zimolzak, the Court finds that Plaintiff is entitled to summary judgment as a matter of law.  It is undisputed that Solena executed a promissory note requiring it to pay to Europlasma the principal amount of €394,517 plus interest on the principal amount from September 14, 2007, until the date of judgment, at an annual rate of four percent (4%), and all costs of collection, including the costs of this lawsuit and reasonable attorneys' fees.  It is further undisputed that Solena breached the promissory note, which is not subject to an arbitration clause, by failing to make such payment by the specified due date and has not made payment at any time thereafter.  Therefore, it is hereby:

ORDERED, that Defendant's Motion to Dismiss Complaint Or, In the Alternative, to Stay and Compel Arbitration is hereby DENIED; and

It is further ORDERED that Plaintiff's cross-motion for summary judgment is GRANTED. Defendant is hereby ORDERED to pay Plaintiff €394,517 in principal (or the equivalent in United States dollars), an amount equal to 4% interest on the amount from September 14, 2007 through the date of judgment, court costs as fixed by the Clerk of this Court and costs of collection in the amount of $40,198.35 as detailed in the affidavit of Joanne L. Zimolzak; and

It is further ORDERED that the Clerk of this Court shall enter judgment for the foregoing amounts in favor of Plaintiff.

This _____ day of August, 2008,

_____
The Honorable Henry H. Kennedy
United States District Court Judge

DC:50563484.1