IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| EUROPLASMA S.A.<br><br>    Plaintiff,<br><br>v.<br><br>SOLENA GROUP, INC.<br><br>    Defendant. | Case No.: 1:08-cv-01089 (HHK) |

**PLAINTIFF'S REPLY IN FURTHER SUPPORT OF ITS
CROSS-MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Europlasma S.A. ("Europlasma"), by counsel, respectfully submits this Reply Memorandum in further support of its Cross-Motion for Summary Judgment and in response to the opposition filed by defendant Solena Group, Inc. ("Solena").

## ARGUMENT

**I.  SUMMARY JUDGMENT SHOULD BE GRANTED IN EUROPLASMA'S FAVOR BECAUSE SOLENA HAS FAILED TO ESTABLISH THAT THERE ARE ANY GENUINE ISSUES FOR TRIAL**

Under Fed. R. Civ. P. 56(e), once a party has properly pleaded and supported a motion for summary judgment, the burden shifts to the non-moving party to establish a genuine issue for trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Specifically, to survive summary judgment the nonmoving party must offer more than mere allegations by going beyond the pleadings and by its own affidavits to designate specific facts showing that there is a genuine issue for trial. Frito-Lay, Inc. v. Willoughby, 863 F.2d 1029, 1033 (D.C. Cir. 1988) (emphasis added, internal citations and citation marks omitted); see also Fed. R. Civ. P. 56(c), 56(e). Unless the non-moving party identifies specific "affirmative evidence" showing disputed

material facts, the court shall enter summary judgment against the adverse party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256-57 (1986).

In this case, Solena has not identified any such evidence to rebut Europlasma's showing that there are no triable issues of fact concerning Solena's breach of contract. To the contrary, Solena admitted each of Europlasma's factual allegations while asserting in conclusory fashion that such facts are not relevant to this dispute, given Solena's belief that the Unsecured Promissory Note ("Note") in dispute is governed by the mandatory ADR provision of the Master Teaming Agreement ("Teaming Agreement"). Solena did not point to "specific facts" to support its contention that the Teaming Agreement governs the Note, but resorted once again to making unsubstantiated legal conclusions while attempting to disguise them as disputed facts. Accordingly, the Court should grant summary judgment in Europlasma's favor and order Solena to pay all amounts due under the Note, including requested attorneys' fees and costs.

### A.     Solena Does Not Dispute Europlasma's Factual Allegations

As an initial matter, Solena incorrectly asserts that Europlasma's only evidence in support of its cross-motion for summary judgment consists of certain correspondence between the parties. See Defendant's Reply In Support Of Its Motion to Dismiss Complaint Or, In The Alternative, to Stay and to Compel Arbitration and Statement Of Points and Authorities In Opposition to Plaintiff's Motion for Summary Judgment (hereinafter "Def's Mem.") at 8. In fact, although Europlasma submitted the referenced correspondence to provide factual context regarding the course of this dispute, the sole evidence in support of Europlasma's motion consists of the terms of the Note and the Teaming Agreement, both of which are part of the record before the Court. Affidavit of Joanne L. Zimolzak (hereinafter "Zimolzak Aff.") Exhs. B-F. As to these documents, Solena has admitted in response to Europlasma's factual allegations

that "that it executed a note for €394,517,"[1] "that it has not yet paid the outstanding balance of the Note,"[2] and "that the amount due under the note is €394,517 plus interest"[3] and "reasonable attorneys' fees."[4] Solena further admits that the Note and the Teaming Agreement are to be governed in accordance with Delaware law.[5]

With regards to the Teaming Agreement, Solena admits that "the rights and obligations of the parties are limited to only those expressly set forth in the Teaming Agreement" and that "[n]either party shall have the authority to bind the other except to the extent authorized herein . . . ."[6] Furthermore, Solena admits that the "[Teaming Agreement] constitutes the entire agreement between the Parties"[7] and that "[n]o amendments or additions to the Agreement shall be binding unless such amendments or additions are in writing and signed by the Parties."[8] Most significantly, Solena does not dispute that the sales governed by the Teaming Agreement are for the purchase of plasma torch systems initiated "from the date of [the] agreement" -- i.e., from May 29, 2007 forward.[9]

---

[1] Defendant's Statement of Material Facts Which Are Genuinely In Dispute (hereinafter "Def's Statement"), ¶ 3.

[2] Def's Statement, ¶ 5.

[3] Def's Statement, ¶ 6.

[4] Def's Statement, ¶ 4 (emphasis omitted).

[5] Def's Statement, ¶¶ 4, 14.

[6] Def's Statement, ¶ 11; Plaintiff's Statement of Material Facts As to Which There Is No Genuine Issue In Support Of Its Cross-Motion for Summary Judgment (hereinafter "Pl's SMF"), ¶ 19.

[7] Def's Statement, ¶ 15; Pl's SMF, ¶ 26.

[8] Def's Statement, ¶ 16; Pl's SMF, ¶ 27.

[9] Def's Statement, ¶ 12; Pl's SMF, ¶¶ 20-21.

B.   **Solena Has Failed to Demonstrate That The Master Teaming Agreement Encompasses the Promissory Note**

In a last ditch attempt to create an issue of material fact, Solena simply states that "this disputes [sic] is subject to the mandatory ADR provision in the [Teaming Agreement]."[10] However, this statement does not create a material issue of fact for trial, but rather represents a faulty legal conclusion that is contrary to (1) the express terms of the Teaming Agreement, (2) the express terms of the Note, and (3) Delaware law governing the interpretation of both the Note and the Teaming Agreement.

1.   **Solena's Contention that the Mandatory ADR Provision In the Master Teaming Agreement Applies to the Promissory Note Is Contrary To Law**

As discussed in [Europlasma]'s Memorandum of Points and Authorities In Support Of Its Opposition to Defendant's Motion to Dismiss Complaint Or, In the Alternative, to Stay and to Compel Arbitration and Cross-Motion for Summary Judgment ("Pl's Mem." or "opening brief"), the Note is not subject to the ADR provisions of the Teaming Agreement. See Pl's Mem. at 6-10. Under Delaware law, the Court cannot look to evidence outside the four corners of an unambiguous contract to try to determine the parties' intent. See Pl's Mem. at 6. Therefore, in order to rely upon the terms of the Teaming Agreement as a basis for divesting this Court of subject matter jurisdiction, Solena would have had to allege that the Note was ambiguous and subject to more than one reasonable interpretation. Id. Solena has not done so. Nor has Solena attempted to dispute these well-settled principles of contract interpretation or challenge the case law cited by Europlasma to support them. It is undisputed that the Note does not contain any arbitration provision, Pl's Mem. at 7, which, under the circumstances of this case, should be sufficient to allow Europlasma to enforce its rights under the Note before this Court.

---

[10] Def's Statement, ¶¶ 5-6; see also Def's Statement at ¶¶ 3, 11, 13-14.

In an effort to avoid judgment, Solena nonetheless continues to maintain that that the Note is subject to a mandatory ADR provision contained in the Teaming Agreement. See Def's Statement, ¶¶ 3, 5-6, 11, 13-14. The interpretation of the Teaming Agreement, however, is subject to the same requirements with regards to extrinsic or parol evidence -- such evidence is inadmissible to prove the parties' intentions absent ambiguity. Id. As with the Note, Solena has neither alleged that the Teaming Agreement is ambiguous nor cited legal authority that would support such a claim. Therefore, this Court is limited to the four corners of the Teaming Agreement to determine its applicability, if any, to the Note. See Pl's Mem. at 6.

As previously discussed in Europlasma's Cross-Motion for Summary Judgment, the clear and unequivocal language of both the Note and the Teaming Agreement establishes that these are separate agreements, supported by separate consideration. Pl's Mem. at 9. Prior to May 29, 2007, Europlasma did not have the assurance that it would be the sole provider of torches to Solena. In consideration for receipt of sole provider status, Europlasma agreed, inter alia, to submit disputes over future sales of the designated torches to arbitration in accordance with the provisions of the Teaming Agreement. Nowhere in the Teaming Agreement, however, do the parties agree that the ADR provision applies to the previous sale of the 300KW torch. Indeed, the Teaming Agreement makes no mention of the prior sale or the Note executed as consideration for delivery of the 300KW torch. Given that "the rights and obligations of the parties are limited to only those expressly set forth in the Teaming Agreement," it follows that the right to sue to recover monies due for the previous sale of the 300 KW torch was not altered by the Teaming Agreement. See Def's Statement, ¶ 11; Pl's SMF, ¶ 19.

### 2. Solena Has Failed to Provide Any "Specific Facts" Supporting Its Contention that the Promissory Note Is Subject to the Mandatory ADR Provision of the Master Teaming Agreement

Solena also cannot withstand summary judgment because it failed to provide any specific facts demonstrating that the Note is subject to the ADR provisions of the Teaming Agreement. See Frito-Lay, 863 F.2d at 1033. The Teaming Agreement is a prospective agreement which governs the purchase of plasma torches from the date of the agreement -- i.e., May 29, 2007 onward. Pl's Mem. at 8. The express terms of the Teaming Agreement limit its scope to sales that occurred after May 29, 2007 and prohibit its application to sales that occurred prior to that date -- i.e. on October 3, 3006, when the 300KW torch at issue was purchased. Id. at 8-10.

Nevertheless, in its Opposition, Solena attempts to enlarge the express terms of the Teaming Agreement to encompass the undefined, presumably larger "business relationship" between itself and Europlasma. The principal "evidence" cited to support this claim is found in the "Recitals" portion of the Teaming Agreement, which states the parties' desire "to work together to develop and implement Solena Projects worldwide using Solena Technology and Europlasma Technology." Def's Mem at 2, 5. It is well-settled under Delaware law, however, that "[r]ecitals are not a necessary part of a contract and can only be used to explain some apparent doubt with respect to the intended meaning of the operative or granting part of the instrument...." Stabler v. Ramsay, 62 A.2d 464, 470 (Del. Ch. 1948) (citations omitted); see also Coca-Cola Bottling Co. v. Coca-Cola Co., 654 F. Supp. 1419 (D. Del. 1987).[11] As discussed above and in Europlasma's opening brief, no such doubt or ambiguity exists with respect to the

---

[11] See also 17A Am. Jur. 2d Contracts § 383 (recitals "indicate only the background of a contract, . . . they do not ordinarily form any part of the real agreement.") This rule is an application of the general principle of contractual interpretation: "[S]pecific terms and exact terms are given greater weight than general language." Restatement (Second) of Contracts § 203(c) (1981); accord 3 Corbin on Contracts § 547; E. Farnsworth, Farnsworth on Contracts § 7.11 at 497- 98 (3d ed. 2003).

operative part of the Teaming Agreement, which plainly limits the scope of the agreement to a prospective three-year term beginning in May, 2007. See Pl's Mem. at 4. Thus, Solena's reliance on the referenced language in the Recitals to enlarge the scope of the Teaming Agreement is misplaced.

Solena also relies on the terms of the confidentiality agreement contained within the Teaming Agreement to establish that the agreement as a whole must "appl[y] to the entire business relationship between Solena and Europlasma." See Def's Mem. at 2-4, 6; see also id. at 3 ("[i]t has always been Solena's intent and understanding that the Agreement applies to all aspects of the business relationship between Solena and Europlasma.") These assertions fare no better. Once again, Solena's insistence that the Teaming Agreement governs some larger "business relationship" outside of the three year term expressly provided for is contrary to the unambiguous language of the Agreement and wholly unsupported. Indeed, Solena's attempt to use the terms of the confidentiality agreement -- which itself is part of and expressly subject to the other terms of the Teaming Agreement -- to enlarge the scope of the parties' relationship would render the clear and unambiguous terms of Section 1.2, "SCOPE OF TEAMING/Equipment Sale and Purchase" meaningless, which is contrary to well-established principles of contract interpretation. See, e.g., O'Brien v. Progressive N. Ins. Co., 785 A.2d 281, 287 (Del. 2001) ("Contracts are to be interpreted in a way that does not render any provisions 'illusory or meaningless.'") (citing Sonitrol Holding Co. v. Marceau Investissements, 607 A.2d 1177, 1183 (Del. 1992); Seabreak Homeowners Ass'n, Inc. v. Gresser, 517 A.2d 263, 269 (Del. Ch. 1986)).[12]

---

[12] Moreover, any modification of the business relationship and any expansion or limitation of the parties' rights was required to be set forth in a written amendment signed by both parties. Def's Statement, ¶ 16. No such written amendment to the scope of the Teaming Agreement exists here.

7

Finally, Solena argues that the communications between itself and Europlasma "show that the Agreement governs the entire business relationship between [the parties]," including, in Solena's estimation, the October, 2006, torch sale and ensuing Note. Def's Mem. at 7. As an initial matter, the referenced communications are inadmissible under Delaware law to modify the terms of the Note because Solena has not claimed that the Note is vague or ambiguous. See Pl's Mem. at 6. Regardless, they do not support Solena's assertion that the Teaming Agreement governs the earlier transaction and/or the Note. To the contrary, the February 14 and April 3, 2008 communications demonstrate that despite Europlasma's desire to continue a partnership working with Solena under the Teaming Agreement, it intended to "sue Solena to recover the amount due" under the Note and "sue your company to recover our unpaid invoices." Zimolzak Aff., Exhs. B, D. The communication also acknowledges that the Teaming Agreement did not govern the sale of any Europlasma torch to Solena other than the 2MW and 0.8MW (800KW) torches.[13] Although not submitted for the purpose of demonstrating the parties intent, but rather to provide background information regarding the nature of this dispute, this communication is wholly consistent with Europlasma's position that the dispute over the 300KW torch was separate and distinct from the Teaming Agreement. In short, Solena has not pointed to a single, specific fact supporting its contention that the Note was subject to the dispute resolution procedures of the Teaming Agreement. There are therefore no triable issues of fact that remain, and Europlasma is entitled to judgment as a matter of law as to Solena's obligations to pay principal and accrued interest as specified in the Note.

---

[13] The February 13, 2008 communication from Sylvain Motycka of Solena to Nicolas Planty of Europlasma inquires (in French) about the difference between the 800KW torch included in the Teaming Agreement and a 700KW torch that Europlasma offers through its website.

C.  **Solena Has Failed To Demonstrate Any Genuine Issue of Fact Regarding Europlasma's Claim For Reasonable Attorneys' Fees**

Solena erroneously asserts that this Court should deny Europlasma's request for an award of attorneys' fees because "Europlasma has failed to make the evidentiary showing necessary to prove that it is entitled to an award of reasonable attorneys' fees." Def's Mem. at 11. This argument ignores the express language of the Note, however, which expressly obligates Solena to pay "all costs of collection, including reasonable attorney fees," in the event of Solena's default. Pl's SMF, ¶ 8. It is undisputed that Solena has defaulted on the Note and that Europlasma has incurred costs of collection. Def's Statement, ¶¶ 3-6. Thus, no genuine factual dispute exists as to whether Europlasma is <u>entitled</u> to an award of costs and reasonable attorneys' fees associated with collection -- it unquestionably is. Indeed, elsewhere in its filing, Solena concedes as much. <u>See</u> Def's Statement, ¶ 4.

To try to avoid this contractual obligation, Solena asserts that the fees claimed by Europlasma are not reasonable. <u>See</u> Def's Mem. at 10-11. As part of its attack on the propriety of Europlasma's requested fees, Solena asserts that while Delaware law governs the interpretation of the Note and the Teaming Agreement, the operative choice of law provisions do not "extend to procedural matters such as the criteria for determining the reasonableness of awards of attorneys' fees." Def's Mem. at 11. Significantly, Solena cites <u>no</u> case law in support of this assertion. Nor does Solena address or try to distinguish the Delaware precedent cited in Europlasma's opening brief regarding this point, which makes clear that reasonableness of attorneys' fees is not a "procedural matter" but a question of law for the court to decide. <u>See</u> Pl's Mem. at 14-16. Courts in this jurisdiction similarly have held that the reasonableness of attorneys' fees is a question of law. <u>See</u> <u>Copeland v. Marshall</u>, 641 F.2d 880 (D.C. Cir. 1980).

9

Thus, contrary to Solena's suggestion, the award of attorneys' fees is indisputably a question of law, and Delaware law should govern. See Def's Statement, ¶ 4.

Regardless of which jurisdiction's law is controlling, Europlasma has demonstrated that the time expended/fees charged by its attorneys meet the standard(s) for reasonableness under applicable law.[14] Pl's Mem. at 14-15. The referenced fees are fully documented, as established by the invoices attached to the Zimolzak Affidavit. Europlasma has averred that the fees charged are reasonable in relationship to the amount in controversy and the rates for civil litigation attorneys of similar experience in the District of Columbia.

Solena has not attempted to counter these allegations with reference to specific facts, as it must to avoid summary judgment, but instead has made unsubstantiated allegations to the effect that the fees charged and time expended are excessive "for what Europlasma characterizes as a simple collections action." Def's Mem. at 11. Solena has it half right -- this is a simple collections action, which Solena has unnecessarily complicated by claiming that its default under the Note is subject to the ADR provision of an entirely separate, unrelated Teaming Agreement. Even factoring in the additional time spent and fees incurred in responding to Solena's motion to dismiss, the amount in controversy is €394,517 (roughly $571,200.00)[15] plus accrued interest at an annual rate of 4%, meaning that that fees claimed represent just a small percentage of the total amount at issue, or around 6%. Having failed to identify any specific facts countering the reasonableness of Europlasma's requested fee award, Solena cannot create a triable issue of fact

---

[14] As Europlasma pointed out in its opening brief, the various reasonableness criteria applicable in Delaware and the District of Columbia are substantially the same. See Pl's Mem. at 15 & n. 6.

[15] See Currency Converter, http://finance.yahoo.com/currency/convert?amt=394517&from=EUR&to=USD&submit=Convert

based on speculation about the proper time needed to consider and respond to the new issues it itself introduced into this matter.[16]

## II. SOLENA'S REQUEST TO CONTINUE EUROPLASMA'S CROSS-MOTION FOR SUMMARY JUDGMENT IN ORDER TO CONDUCT DISCOVERY PURSUANT TO RULE 56(F) SHOULD BE DENIED

Solena's alternative request, that this Court should deny or defer ruling on Europlasma's cross-motion for summary judgment in order to permit Solena to conduct discovery, also lacks merit and should be denied. This is true for two principal reasons.

First and foremost, Solena has failed to make the requisite showing under Rule 56(f). Courts in this Circuit have found that a Rule 56(f) request for continuance must be supported by "good faith reasons for the movant's complete inability to produce the evidence necessary to defeat the motion for Summary Judgment." E.g., Greenberg v. FDA, 803 F.2d 1213, 1223 (D.C. Cir. 1986). The party seeking relief must "conclusively justify his entitlement to the shelter of Rule 56(f) by presenting specific facts explaining the inability to make a substantive response as required by Rule 56(e)." Id. at 1224 (quoting SEC v. Spence & Green Chem. Co., 612 F.2d 896, 901 (5th Cir. 1980)).

Solena has not done so here. Instead of presenting specific factual reasons that a continuance is needed, Solena initially (and repeatedly) asserts that information in the record -- i.e., the language of the Teaming Agreement and certain of the parties' correspondence -- conclusively demonstrates that Solena's breach of the Note relates to the Teaming Agreement and that the current dispute is therefore subject to the Agreement's mandatory ADR provisions. See Def's Mem. at 7-10; Affidavit of James M. Mesnard (hereinafter "Mesnard Aff.") at ¶¶ 11-

---

[16] Under the procedural laws of this jurisdiction, Europlasma is entitled to receive attorneys' fees for its preparation of materials supporting its claim for attorneys' fees. Copeland, 641 F.2d at 901 ("[T]ime spent litigating the fee award normally is itself compensable.").

12. As discussed above and in Europlasma's opening brief, Solena's assertions in this regard are at odds with the facts. Such assertions also are at odds with the letter and spirit of Rule 56(f), which is designed to protect litigants who are unable <u>without</u> factual discovery to rebut the movant's showing that there are no triable issues of fact. See <u>Greenberg</u>, 803 F.2d at 1224-25.

Arguing in the alternative, Solena baldly asserts that it is "entitled to" and "should be permitted an opportunity to" discover information concerning Europlasma's internal and external communications about the Teaming Agreement, in order to rebut Europlasma's allegations that the Agreement and the Note are unrelated. Def's Mem. at 10; Mesnard Aff. at 9-11. Solena also asserts that it should be permitted to conduct discovery concerning Europlasma's entitlement to recover $40,198.35 in attorneys' fees and costs, because the bills and time charges submitted by Europlasma in support of such recovery purportedly are "not reasonable." Def's Mem. at 10-11. Yet, Solena makes no attempt to substantiate these assertions with reference to particular facts purportedly within Europlasma's exclusive control that will enable Solena to demonstrate the existence of genuine issues of fact. "Such conclusory assertions are not acceptable under Rule 56(f)." <u>Greenberg</u>, 803 F.2d at 1225.

Second, where, as here, "the discovery sought appears irrelevant [ ] or . . . wholly speculative, relief under Rule 56(f) must be denied." <u>Id.</u> at 1224 (citations omitted). As to the "reasonable attorneys' fees" issue, as discussed in the previous section, Solena has stated that certain hourly rates charged and hours expended by Europlasma's attorneys are "excessive," but has not offered any factual support for these assertions. As to Solena's claim that discovery is necessary to counter Europlasma's factual assertions that the Note and the Teaming Agreement are separate contractual documents, supported by separate consideration, and that the ADR provision in the Agreement does not encompass the Note, the record before the Court already

12

contains both agreements, each of which is unambiguous on its face. As a matter of law, these two agreements are the only documents admissible to establish whether Solena's 2006 purchase of the 300KW torch and the Note executed as consideration for the delivery of that torch are governed by the Teaming Agreement. See § I.B., supra; see also Pl's Mem. at 6-10. The information sought in discovery necessarily constitutes extrinsic or parol evidence, which is inadmissible under Delaware law to determine the intent of the parties' concerning an unambiguous contract. See § I.B., supra; see also Pl's Mem. at 6-10. Solena's request thus seeks information that is neither relevant to resolution of the parties' dispute nor reasonably calculated to lead to the discovery of admissible evidence. Accordingly, Solena's Rule 56(f) motion should be denied. See Fed. R. Civ. P. 26(b)(1); Greenberg, 803 F.2d at 1224 (denying Rule 56(f) motion where movant "failed to show the court that any of his unanswered discovery requests, if answered, would lead to admissible facts pertinent to a genuine issue.")

The cases cited by Solena in support of its Rule 56(f) motion lend further support to Europlasma's position, not Solena's. In Exxon Corp. v. FTC, for example, the appellate court upheld the district court's refusal to grant a party's request for a continuance to permit discovery, finding that "there is no material issue of fact present." 663 F.2d 12, (D.C. Cir. 1980). The Court denied Exxon's request for leave on the basis that Exxon "failed to show that the requested discovery was necessary to oppose the FTC's summary judgment motion." Id. at 128. And, although the court in Black v. Nat'l Football League Players Ass'n, 87 F. Supp. 2d 1, 3 (D.D.C. 2000), determined that Rule 56(f) discovery was appropriate in that case, it did so only after finding that the plaintiff required information to support his position that was unavailable to him absent discovery. In sum, these cases and the other Circuit precedent cited above make clear that a party seeking Rule 56(f) discovery must proffer specific facts showing that discovery is

necessary to dispose of the opposing party's motion for summary judgment. Solena plainly has not met this prerequisite here, and this Court should therefore deny the requested relief.

## CONCLUSION

For the foregoing reasons, as well as those advanced in Europlasma's opening brief, Europlasma respectfully requests that its cross-motion for summary judgment be granted.[17] Solena has failed to produce any evidence or counter Europlasma's allegations with specificity sufficient to raise a triable issue of material fact. Rather, the undisputed record shows that Solena executed a promissory note requiring it to pay certain sums to Europlasma by January 10, 2008; that Solena breached the promissory note by failing to make such payment by the specified due date (or any time thereafter); and that this matter is properly before the Court. Accordingly, Europlasma is entitled to judgment as a matter of law as to all of its claims.

Dated: September 3, 2008

/s/ Joanne L. Zimolzak
Joanne L. Zimolzak, D.C. Bar No. 452035
Frank M. Rapoport, D.C. Bar No. 326512
MCKENNA LONG & ALDRIDGE LLP
1900 K Street, NW
Washington, D.C. 20006
(202) 496-7500
(202) 496-7756 (facsimile)
Attorneys for Plaintiff, Europlasma S.A.

---

[17] The reasons that Solena's motion to dismiss/motion for summary judgment also should be denied are discussed in Europlasma's opening brief at pages 6-10.